**Alberto RODRIGUEZ, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 08–97–00268–CR.**

Court of Appeals of Texas,
El Paso.

Sept. 27, 2001.

Rehearing Overruled Oct. 17, 2001.

Discretionary Review Refused
March 27, 2002.

Matthew DeKoatz, El Paso, for appellant.

Jaime E. Esparza, Tom A. Darnold, El Paso, for state.

Before Panel No. 2 BARAJAS, C.J., McCLURE, and CHEW, JJ.

## OPINION

BARAJAS, Chief Justice.

This is an appeal from jury convictions for two (2) counts of engaging in organized criminal activity. The jury assessed punishment at twenty (20) years' imprisonment in the Institutional Division of the Texas Department of Criminal Justice on each count. We affirm the judgment of conviction.

## I. SUMMARY OF THE EVIDENCE

Appellant was originally indicted on four counts of engaging in organized criminal activity. This original indictment was dismissed and Appellant was re-indicted for three counts of engaging in organized criminal activity. Counts I and II alleged that Appellant engaged in bribery as the underlying offense. Count III alleged the underlying offense of aggregated theft. Prior to trial, the State dismissed Count II. The jury found Appellant guilty on Counts I and III and assessed punishment at twenty (20) years' imprisonment. At trial, the State utilized the testimony of James Carroll Sikes. He testified that he was the bookkeeper for a business called Lamco which supplied heating and air-conditioning parts. Appellant was the sole proprietor of the business. Sikes testified regarding Lamco's financial records for 1994 and the first part of 1995. These records included Lamco's general ledgers, transaction lists, and vendor lists. Sikes testified that whenever Lamco issued a check, the check would be assigned to a particular account; in the case of checks issued to Lamco's suppliers or vendors, the checks were assigned to the cost of goods sold which was an inventory account. Appellant would inform Sikes if he was to assign them as purchases for inventory.

One vendor on Lamco's list was assigned the term "cash." Sikes testified that when Appellant wrote a check to cash, Appellant would inform him that he took the cash to purchase inventory in Mexico for resale to the El Paso Independent School District (EPISD)—Lamco's major account. Appellant told Sikes to credit such checks to Lamco's inventory account. Appellant never provided Sikes with any receipts or invoices from such alleged purchases.

With regard to Lamco's purchases of inventory from Mexico, David Scott McGurk, an import specialist for the United States Custom Service, testified that when people or businesses import commercial goods from Mexico, they are required

to fill out the appropriate paperwork and declare the goods being imported. McGurk stated that he ran a computer search of the records of the United States Custom Service; he was unable to find any indication that Lamco or Appellant had imported any goods from Mexico.

Detective Gerald Palmer testified that he worked for the white collar unit of the El Paso Police Department. He stated that he examined Lamco's records and compared Lamco's purchases of inventory against what Lamco had purportedly delivered to EPISD. Utilizing this comparison, Detective Palmer determined that Lamco could not have delivered to EPISD all of the items EPISD had purchased and paid for because Lamco had never purchased those items from any of its suppliers. A summary of the transactions that Detective Palmer determined to be fraudulent, based on this comparison, was admitted into evidence. Detective Palmer then detailed each of the co-defendants' participation in the kickback scheme, and exhibits showing the amounts attributable to each of the co-defendants were admitted into evidence. According to Detective Palmer, the total amount of fraudulent transactions was approximately $183,000.

During his cross-examination, Detective Palmer stated that his conclusions regarding Lamco's purchases from its suppliers were based on the checks written by Lamco, and that he did not believe that the checks written to "cash," allegedly used to purchase inventory in Mexico, were actually used for that purpose. This conclusion was based on the lack of any receipts or other documentation of any such purchases from Mexico, as well as the lack of any records from U.S. Customs showing that Lamco had imported any goods from Mexico.

When Detective Palmer learned of the possible criminal activity in this case, he conducted a two-week surveillance of Lamco. During this surveillance, Detective Palmer noted numerous EPISD employees going into Lamco's building. The employees would go into Lamco's building and they would stay anywhere from 15 minutes to two hours. They left without carrying any parts or supplies.

John W. Whitaker, the Associate Superintendent for Operations at EPISD, testified that he oversaw the maintenance department of EPISD, including the unit that repaired the heating, ventilation, and air-conditioning equipment ("HVAC"). Whitaker testified that in the HVAC unit, there were two-man teams, and these teams consisted of a lead man and a helper. If a problem arose regarding a heating or cooling unit, it was reported to the HVAC division. Then one of these two-man teams was assigned to investigate and correct the problem. If the situation required the purchase of a part to replace a defective part, the team was authorized to go to an approved vendor to purchase the part. An invoice would be signed for the replacement part. Whitaker explained that during the time covering the investigation, EPISD had no procedure to check and guarantee that the parts purchased were actually delivered to EPISD. Whitaker testified that EPISD had to assume that the employees did in fact take delivery of the parts they signed for and that were eventually paid for by EPISD.

At the time of Appellant's trial, two EPISD maintenance employees had entered plea agreements with the State due to their involvement with Appellant in the scheme to defraud EPISD and had agreed to testify for the State. Oscar Esparza testified that while he worked in the maintenance department of EPISD, he held the position of helper and worked with a lead man. Esparza testified that when his team would go to Lamco, they would often

sign invoices without actually getting the parts that were listed on the invoice. Esparza stated that he knew it was wrong to sign for the fraudulent invoices. He testified that on one occasion, Appellant handed $50 to his lead man, Manny Barrera, who then handed the $50 to Esparza.

Ruben Prieto testified that he worked in the HVAC division of EPISD maintenance as a helper and a lead man. Prieto explained how he became involved in the kickback scheme, characterizing the payments made to him by Appellant as "loans" that were to be paid back to Appellant by EPISD. For all of the fraudulent invoices signed by Prieto, he and Appellant would split the proceeds "50/50." Specifically, Prieto would call Appellant and tell him that he was going to come in, and Appellant would have Prieto's share of the money ready for him.

Dr. Stan Paz, the Superintendent of Schools for EPISD, testified concerning the procedures that were followed before an EPISD check was issued to a vendor in payment for parts purchased from the vendor. Dr. Paz stated that when his signature was affixed to the checks, he assumed that EPISD had actually received the parts that the checks supposedly paid for, and if he had known that the parts were not actually received by his employees, he would not have signed the checks.

## II. *DISCUSSION*

■■■ In Issue No. Five, Appellant contends that the evidence was legally insufficient to sustain the conviction. In reviewing the legal sufficiency of the evidence, we are constrained to view the evidence in the light most favorable to the judgment to determine whether any rational trier of fact could find the essential elements of the offense, as alleged in the application paragraph of the charge to the jury, beyond a reasonable doubt. *Jackson v. Vir-*

*ginia,* 443 U.S. 307, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979); *Geesa v. State,* 820 S.W.2d 154, 159 (Tex.Crim.App.1991); *Butler v. State,* 769 S.W.2d 234, 239 (Tex. Crim.App.1989); *Humason v. State,* 728 S.W.2d 363, 366 (Tex.Crim.App.1987). More particularly, sufficiency of the evidence should be measured by the elements of the offense as defined by the hypothetically correct jury charge for the case. *Malik v. State,* 953 S.W.2d 234, 239–40 (Tex.Crim.App.1997).

■■■ Our role is not to ascertain whether the evidence establishes guilt beyond a reasonable doubt. *Stoker v. State,* 788 S.W.2d 1, 6 (Tex.Crim.App.1989), *cert. denied,* 498 U.S. 951, 111 S.Ct. 371, 112 L.Ed.2d 333 (1990); *Dwyer v. State,* 836 S.W.2d 700, 702 (Tex.App.—El Paso 1992, pet. ref'd). We do not resolve any conflict in fact, weigh any evidence or evaluate the credibility of any witnesses, and thus, the fact-finding results of a criminal jury trial are given great deference. *Menchaca v. State,* 901 S.W.2d 640, 650–52 (Tex.App.— El Paso 1995, pet. ref'd); *Adelman v. State,* 828 S.W.2d 418, 421 (Tex.Crim.App. 1992); *Matson v. State,* 819 S.W.2d 839, 843 (Tex.Crim.App.1991); *Leyva v. State,* 840 S.W.2d 757, 759 (Tex.App.—El Paso 1992, pet. ref'd); *Bennett v. State,* 831 S.W.2d 20, 22 (Tex.App.—El Paso 1992, no pet.). Instead, our only duty is to determine if both the explicit and implicit findings of the trier of fact are rational by viewing all the evidence admitted at trial in the light most favorable to the verdict. *Adelman,* 828 S.W.2d at 421–22. In so doing, we resolve any inconsistencies in the evidence in favor of the verdict. *Matson,* 819 S.W.2d at 843 (quoting *Moreno v. State,* 755 S.W.2d 866, 867 (Tex.Crim.App. 1988)). The trier of fact, not this appellate court, is free to accept or reject all or any portion of any witnesses' testimony. *Bel-*

*ton v. State,* 900 S.W.2d 886, 897 (Tex. App.—El Paso 1995, pet. ref'd).

Regarding the offense of engaging in organized criminal activity, "A person commits an offense if, with the intent to establish, maintain, or participate in a combination or in the profits of a combination or as a member of a criminal street gang, he commits ... (one of the enumerated offenses, including theft and bribery)." TEX. PEN.CODE ANN. § 71.02(a) (Vernon Supp. 2001). A combination means:

> [T]hree or more persons who collaborate in carrying on criminal activities, although:
>
> (1) participants may not know each other's identity;
>
> (2) membership in the combination may change from time to time; and
>
> (3) participants may stand in a wholesaler-retailer or other arms' length relationship in illicit distribution operations.

TEX. PEN.CODE ANN. § 71.01(a) (Vernon Supp.2001).

 If the accused commits the underlying offense with the specific intent to facilitate an existing combination, he has violated the engaging statute. *See Fee v. State,* 841 S.W.2d 392, 395 (Tex.Crim.App. 1992). In proving the existence of a combination, the State need not demonstrate the participation of all alleged members of the combination; the State need only prove the participation of at least three of the named members of the combination-including the defendant. *See Crum v. State,* 946 S.W.2d 349, 356 (Tex.App.— Houston [14th Dist.] 1997, pet. ref'd). The State is required to prove that the defendant committed the predicate offense with the specific intent to participate in or facilitate a combination. Further, in order to prove the defendant's intent to participate in a combination, the State must prove not only that the defendant knew of the existence of the combination, but also that the defendant knew of the criminal activity of the group. *See McGee v. State,* 909 S.W.2d 516, 518 (Tex.App.—Tyler 1995, pet. ref'd). It is Appellant's primary contention that the State failed to corroborate the testimony of Oscar Esparza and Ruben Prieto.[1] The jury was instructed that Oscar Esparza and Ruben Prieto were accomplices and that the jury could not find Appellant guilty unless:

> [Y]ou first believe that the testimony of the said OSCAR Esparza and RUBEN PRIETO is true and that it shows the defendants are guilty as charged in the indictment; and even then you cannot convict the defendants unless you further believe that there is other evidence in the case, outside the evidence of the said OSCAR Esparza and RUBEN PRIETO tending to connect the defendants with the commission of the offense charged in the indictment, and then from all of the evidenefendants (sic) are guilty.

 With regard to the theft allegation, the two accomplice witnesses, Esparza and Prieto, provided testimony that they engaged in a type of kickback scheme with Appellant. Further, corroboration was provided by the State's other evidence, particularly Lamco's records. These records corroborated Esparza's and Prieto's testimony that Appellant and nu-

---

1. The State maintains that Appellant has not adequately briefed Issue Nos. Five and Six because, while he asserts the evidence was insufficient to corroborate the testimony of the accomplice witnesses, he does not indicate which of the elements or offenses the State failed to prove. While Appellant's brief is indeed vague regarding these matters, we will address his sufficiency contentions in light of his claim that the evidence was insufficient to corroborate the testimony of the accomplice witnesses.

merous other EPISD employees signed false invoices by revealing that Appellant and Lamco had purported to sell and deliver to EPISD hundreds of items that Lamco had never purchased from any of its suppliers. The evidence demonstrated the existence of a combination consisting of at least three individuals carrying out an illegal activity and that Appellant knew of the combination and its illegal nature. Furthermore, the evidence showed that Appellant committed the offense of theft with the intent to participate in or facilitate the combination or participate in the profits of the combination. Viewing the evidence in the light most favorable to the verdict, we find sufficient evidence to support the conviction on Count III.

Regarding Count I which alleged bribery and the underlying predicate offense, a person commits the offense of bribery if he confers or agrees to confer on another a benefit as consideration for the decision or exercise of discretion of the person as a public servant. TEX. PEN.CODE ANN. § 36.02(a)(1) (Vernon 1994).

EPISD Superintendent Dr. Paz testified that EPISD employees were not authorized to receive money from Lamco for doing business with Lamco outside of their EPISD employment, because receiving any type of benefit from Lamco could influence the EPISD employee's decision when selecting which vendor to use for EPISD business.

Ruben Prieto testified that he performed work for Appellant outside of his employment and Appellant paid Prieto for that work. There was testimony that Prieto was listed as a vendor for Lamco and that payments to Prieto were posted to Lamco's inventory account. The evidence from Palmer and Sikes also revealed that numerous payments by Lamco were paid to other EPISD employees.

Additionally, John Patrick Cunningham testified that he was a wholesale appliance dealer. He stated that Appellant kept an open account with his business. Appellant had purchased numerous appliances and furniture, items of furniture and electronic equipment that were picked up by EPISD employees. Lamco never sold any of these items as a part of its business.

The evidence indicated that Appellant provided EPISD employees with benefits in exchange for their decision or to utilize their discretion to provide Lamco EPISD's business. While there is no direct evidence of that intent, the jury is entitled to use a collective common sense and is to apply common knowledge and experience gained in the ordinary affairs of life to draw reasonable inferences from the evidence. *Nelson v. State,* 893 S.W.2d 699, 704 (Tex.App.—El Paso 1995, no pet.). Accordingly, we find that the evidence was legally sufficient to support the conviction regarding both counts. Appellant's Issue No. Five is overruled.

In Issue No. Six, Appellant contends that the evidence is factually insufficient to support the conviction. In reviewing a factual sufficiency of the evidence challenge, this Court considers all of the evidence, but does not view it in the light most favorable to the verdict. *Clewis v. State,* 922 S.W.2d 126, 129 (Tex.Crim. App.1996); *Taylor v. State,* 921 S.W.2d 740, 745 (Tex.App.—El Paso 1996, no pet.). We will set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Clewis,* 922 S.W.2d at 129; *Taylor,* 921 S.W.2d at 745. In conducting a factual sufficiency review, the reviewing court cannot substitute its conclusions for those of the jury. *Davila v. State,* 930 S.W.2d 641, 647 (Tex.App.—El Paso 1996, pet. ref'd); *Taylor,* 921 S.W.2d at 746. It is not within the province of this Court to

interfere with the jury's resolution of conflicts in the evidence or to pass on the weight or credibility of the witness's testimony. *Davila*, 930 S.W.2d at 647; *Taylor*, 921 S.W.2d at 746. Where there is conflicting evidence, the jury's verdict on such matters is generally regarded as conclusive. *Davila*, 930 S.W.2d at 647; *Taylor*, 921 S.W.2d at 746. However, we must balance all of the evidence, both the evidence which tends to prove the existence of a vital fact as well as evidence which tends to disprove its existence, to determine whether any rational trier of fact could find the essential elements as alleged in the charge to the jury beyond a reasonable doubt. *Chesnut v. State*, 959 S.W.2d 308, 310–11 (Tex.App.—El Paso 1997, no pet.); *Lozano v. State*, 958 S.W.2d 925, 928 (Tex.App.—El Paso 1997, no pet.). The factual sufficiency review authorized by *Clewis* encompasses both formulations of evidentiary insufficiency utilized in civil cases; that is, evidence can be factually insufficient to support a conviction if: (1) the evidence of guilt is so weak as to render the jury's verdict clearly wrong and unjust; or (2) the guilty verdict is against the great weight and preponderance of the evidence. *Johnson v. State*, 23 S.W.3d 1, 11 (Tex.Crim.App.2000). If we find factual insufficiency, we vacate the conviction and remand for a new trial. *Clewis*, 922 S.W.2d at 133–35.

Appellant does not provide any separate analysis as to why he thinks the evidence is factually insufficient. Given the prior discussion, we find that the evidence is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. Appellant's Issue No. Six is overruled.

In Issue No. One, Appellant maintains the court erred in failing to grant a severance of Counts I and III of the indictment. The record shows that on March 1, 1996,

Appellant filed a motion to sever for trial each of the counts in the initial four-count indictment, as well as a motion to sever his trial from that of his co-defendants. During a pretrial hearing, the presiding trial judge of the 171st District Court granted the motion to sever; although a written order of severance does not appear in the record. Appellant was re-indicted on January 6, 1997. The court ruled that all motions and orders from the original cause number were to be carried over into the new cause number.

Appellant's trial began on June 23, 1997, with a visiting judge presiding. Prior to jury selection, the court inquired:

COURT: Okay are we ready to seat the panel? Does the defense have any motions?

DEFENSE: Firstly, Judge, simply apprising (sic) the Court that the Court that the accused has executed an application for probation. I'm hoping the Court has that, and I'm hoping that it has been filed. Does the Court have that, Judge?

COURT: I have the file.

DEFENSE: Furthermore, we filed an election to go to the jury in the event of the second phase of trial.

COURT: Okay. The Court needs to clear up one thing, I looked at the file briefly and note that the defendant is accused of engaging in organized criminal activity and the Indictment seems to reflect bribery and aggravated (sic) theft, both of which are 2nd class felonies. Do all counsel agree with that?

STATE: Well, Judge, when you add the engaging on it, it boots it up one.

COURT: It boots it up one. I just wanted to make sure of that.

DEFENSE: Count 1 and 3, Judge, my understanding is that Count 2 has been dismissed.

COURT: Okay. So then what are the counts that we are here for?

STATE: You have two counts—you had three counts originally. Okay. Count 2 was dismissed. Count one is still here for today on and Count 3.

COURT: That's engaging in organized in criminal activity—

STATE: Through bribery.

COURT:—through bribery. And Count 3 is for aggravated theft?

STATE: Engaging in organized criminal activity through aggravated theft.

COURT: A second class felony then it goes up to a first class felony?

DEFENSE: Yes, sir, Judge.

COURT: All right. Thank you.

■■■■■ A proper and timely request for a severance of multiple charges in a single indictment entitles a defendant to a severance. *See* TEX. PEN.CODE ANN. § 3.04(a) (Vernon 1994); *Warmowski v. State,* 853 S.W.2d 575, 576–77 (Tex.Crim. App.1993). Such a request is timely if it is raised in a pretrial hearing pursuant to TEX.CODE CRIM. PROC. ANN. art. 28.01 (Vernon 1989) or, in the absence of such a pretrial hearing, the motion must still be raised pretrial. *Thornton v. State,* 986 S.W.2d 615, 617 (Tex.Crim.App.1999).[2] In the present case, the request to sever the counts in the indictment was timely. When a defendant creates the impression that he is abandoning his objection, his initial objection is insufficient to preserve the issue for appeal. *Ramos v. State,* 819 S.W.2d 939, 942 (Tex.App.—Corpus Christi 1991, pet. ref'd). Further, an accused may not be allowed to benefit on appeal from any situation or error he brought upon himself during the trial. *See Franks v. State,* 961 S.W.2d 253, 255 (Tex. App.—Houston [1st Dist.] 1997, pet. ref'd). In the present case, when the court specifically inquired as to which counts were proceeding to trial, Appellant, in effect, abandoned his severance request by appearing to acquiesce in proceeding to trial on both counts and by failing to insist upon the right to severance by informing the court of the prior judge's ruling. As Appellant cannot complain on appeal of error in which he was a moving factor, we find that he has failed to preserve this issue on appeal. *See Franks,* 961 S.W.2d at 255.

■■■■■ Even if Appellant had preserved error, we find the error to be harmless. Errors in failing to grant a severance are analyzed for harm pursuant to TEX.R.APP. P. 44.2(b).[3] *See Llamas v. State,* 12 S.W.3d 469, 472 (Tex.Crim.App. 2000). Rule 44.2(b) requires us to examine error in relation to the entire proceeding and determine whether it had a substantial

---

2. During trial, the court denied Appellant's motion for the State to elect which Count would be submitted to the jury. Appellant seems to suggest that it was error to deny the motion. This motion was properly denied. *See* TEX.CODE CRIM. PROC. ANN. art. 21.24 (Vernon 1989); *LaPorte v. State,* 840 S.W.2d 412, 413–14 (Tex.Crim.App.1992). Furthermore, such a motion is not sufficient to timely raise the issue of severance. *See, e.g., Coleman v. State,* 788 S.W.2d 369, 370–73 (Tex.Crim.App. 1990).

3. Rule 44.2 provides in pertinent part:

**44.2. Reversible Error in Criminal Cases**
(a) Constitutional Error. If the appellate record in a criminal case reveals constitutional error that is subject to harmless error review, the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment.
(b) Other Errors. Any other error, defect, irregularity, or variance that does not affect substantial rights must be disregarded.

and injurious effect or influence in determining the jury's verdict. *King v. State,* 953 S.W.2d 266, 271 (Tex.Crim.App.1997) (citing *Kotteakos* v. *U.S.,* 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946) (discussing federal "harmless error" rule containing similar language)); *Sanford v. State,* 21 S.W.3d 337, 345 (Tex.App.—El Paso 2000, no pet.). If the reviewing court determines that the error did not have an influence on the jury, or "had but very slight effect," the verdict must stand. *Kotteakos,* 328 U.S. at 764–65, 66 S.Ct. at 1248; *Johnson v. State,* 967 S.W.2d 410, 417 (Tex.Crim.App.1998); *Sanford,* 21 S.W.3d at 345. Stated another way, the error must have affected the outcome of the lower court proceedings. *Sanford,* 21 S.W.3d at 345. If the record fails to show that the error had such an impact, it cannot be said to affect a substantial right, and therefore, we are mandated to disregard the error. *Id.; Richardson v. State,* 981 S.W.2d 453, 457 (Tex.App.—El Paso 1998, pet. ref'd). If we have "grave doubts" about whether an error did not affect the outcome, we must treat the error as if it did. *Sanford,* 21 S.W.3d at 345.

 Turning to the case at bar, the State argues that the evidence of each of the crimes would have been admissible in a separate trial of the other offense as "same transaction contextual evidence" and cites *Rogers v. State,* 853 S.W.2d 29, 32–34 (Tex. Crim.App.1993) in support of this position. The State reasons that because the jury would have heard the same evidence regardless of whether the offenses were tried separately in different trials or together in one, the joinder of the offenses in a single trial could not have affected Appellant's substantial rights. We agree. We find that a substantial right of Appellant was not affected and the error had no injurious effect on the jury verdict. Issue No. One is overruled.

In Issue No. Two, Appellant maintains that the court erred in granting the school district's motion to quash his subpoena. The trial commenced on June 13, 1997. The State rested its case-in-chief on July 2, 1997. The defense began its defense on the same day. The next day Appellant's counsel brought to the court's attention that a subpoena he attempted to issue back in April had not been served and he had to reissue the subpoena on July 1, 1997. The subpoena was a subpoena *duces tecum* requesting the custodian of records for EPISD to produce voluminous records. The subpoenas were served the morning of July 3, 1997. Appellant orally moved for a continuance because the school district was unable to provide the records at that time. The attorneys for EPISD presented evidence that it would take two to three weeks to produce the requested material. The court granted EPISD's motion to quash the subpoena.

 The right to compulsory process is not absolute, and questions as to limitations on the right are addressed to the trial court's discretion. *See Muennink v. State,* 933 S.W.2d 677, 684 (Tex.App.— San Antonio 1996, pet. ref'd). Further, the right to compulsory process is dependent upon an accused's initiative, and the nature of the right requires that its effective use be preceded by "deliberate planning and affirmative conduct" by the defendant. *See Taylor v. Illinois,* 484 U.S. 400, 410, 108 S.Ct. 646, 653–54, 98 L.Ed.2d 798 (1988). We find that the court did not err in granting the motion to quash. It was through Appellant's failure to initially establish that the subpoena had been served that the court was presented with the possibility of delaying the trial two or more weeks. We find that the court did not abuse its discretion in granting the motion to quash. Issue No. Two is overruled.

In Issue No. Three, Appellant argues that the court erred in denying Appellant's motion for a new trial based upon a void conviction. Specifically, Appellant maintains that the indictment was defective in that it alleged aggregated theft rather than merely theft as the underlying offense in the engaging in organized criminal activity charge. We note that Appellant did not raise his complaint regarding the alleged indictment defect prior to trial. The failure to allege an element of the offense in an indictment or information is a defect of substance, which is nevertheless waived under TEX.CODE CRIM. PROC. ANN. art. 1.14(b) (Vernon Supp. 2001). *See Studer v. State,* 799 S.W.2d 263, 267–68 (Tex.Crim.App.1990). As long as the charging instrument charges "the commission of an offense," it is not fundamentally defective even if it fails to allege an element of an offense. *See Duron v. State,* 956 S.W.2d 547, 551 (Tex.Crim.App. 1997). An indictment will suffice if it charges a crime with enough clarity and specificity to identify the penal statute which the State intends to utilize, even if the instrument is otherwise defective. TEX. PEN.CODE ANN. § 71.02(a)(1) (Vernon Supp.2001) provides that a person commits an offense if with intent to establish, maintain, or participate in a combination or in the profits of a combination he commits or conspires to commit theft. In the present case, Count III of the indictment alleged, in part, that Appellant had the intent to establish, maintain, or participate in a combination consisting of Appellant and various named individuals with the intent to participate in the profits of the combination with the object of the combination being the commission of aggregated theft. The indictment was such that Appellant was able to identify the appropriate penal statutes involved. Accordingly, he was required to object to the indictment prior to the day of trial; he has waived his complaint on appeal. *See* TEX.CODE CRIM. PROC. ANN. art. 1.14(b) (Vernon Supp.2001); *Smith v. State,* 959 S.W.2d 1, 9 (Tex. App.—Waco 1997, pet. ref'd). Issue No. Three is overruled.

In Issue No. Four, Appellant contends that the court erred by failing to take judicial notice that Appellant could not compel the attendance of a witness from Mexico. During trial, the State presented evidence supporting its theory that Lamco did not purchase any inventory from Mexico. Appellant requested that the court take judicial notice that the defense could not subpoena witnesses from Mexico. During a voir dire examination of an assistant district attorney, he testified that a witness in a foreign country could not be subpoenaed through the normal subpoena process. Later during the trial, Appellant requested that the court take judicial notice of that and instruct the jury that a witness in Mexico could not be subpoenaed. The court refused to make the requested instruction.

TEX.R. EVID. 201(d) states, "a court shall take judicial notice if requested by a party and supplied with the necessary information." However, the rule explicitly states it applies only to judicial notice of "adjudicative" facts. TEX.R. EVID. 201(a). If the fact requested to be judicially noticed is a "legislative" fact rather than adjudicative, a court's decision whether to take judicial notice of the fact is within that court's discretion. *See Aguirre v. State,* 948 S.W.2d 377, 380 (Tex.App.— Houston [14th Dist.], 1997, pet. ref'd).

Adjudicative facts are those facts concerning "a particular event which gave rise to the lawsuit and, ... help explain who did what, when, where, how, and with what motive and intent." *See Emerson v. State,* 880 S.W.2d 759, 765 (Tex.Crim.App.1994), *cert. denied,* 513 U.S.

931, 115 S.Ct. 323, 130 L.Ed.2d 284 (1994). Legislative facts are facts that are general, relate to the content of law and policy, and do not concern only the parties involved in the case at hand. *Id.* The ability or inability to subpoena witnesses or documents from Mexico is a legislative fact regarding the content of law and policy. Given the content of the request, the court did not abuse its discretion in refusing to take judicial notice of the requested matter. Appellant's Issue No. Four is overruled.

In Issue No. Seven, Appellant asserts that the court erred in failing to provide a specific charge on the law of parties. In the charge to the jury, the court instructed the jury on the law of parties in the abstract portion of the charge. The law of parties was also included in the application paragraphs of the charge as follows: "Now, therefore if you believe ... that the defendant ..., either individually or acting with another or others as a party to the offense, as that term is herein defined ..." Appellant objected to the charge in that it did not explicitly apply the law of parties to the facts, that is, whether Appellant solicited, encouraged, directed, aided, or attempted to aid another person in the commission of the offense. The court overruled Appellant's objection to the charge.

■ If the defendant requests a more explicit application of the law of parties, the court should tailor the application paragraph to the evidence; that is, the court should in the application paragraph, specify which mode of assistance (i.e., whether the defendant solicited, encouraged, directed, aided, attempted to aid, or some combination thereof) depending upon the evidence presented. *See Ransom v. State,* 920 S.W.2d 288, 302–03 (Tex.Crim. App.1994). However, in *Goff v. State,* 931 S.W.2d 537, 545 (Tex.Crim.App.1996), *cert. denied,* 520 U.S. 1171, 117 S.Ct. 1438, 137 L.Ed.2d 545 (1997), the Court held that where there was some evidence that the defendant's conduct qualified under each mode of assistance, a court does not err in refusing to submit a more explicit application of the law of parties. *Id.*

■ In the present case, we find that Appellant did so engage in each mode of assistance. Appellant solicited Prieto in that he told him that he could get tools for him in exchange for the fraudulent invoices. Appellant encouraged Prieto in that he received a loan from Appellant to be paid off by the use of fake invoices. Appellant stated to Prieto, when he attempted to pay back Appellant, "Well, if you want, or we can keep submitting invoices until we pay this off." They then proceeded on that course. That Appellant directed Prieto can be taken from the same event in that he refused to take Prieto's money to pay back the loan. Appellant aided or attempted to aid in that Oscar Esparza testified that Appellant prepared the fake invoices.

■ Furthermore, we find that no harm occurred. Error in the charge, if timely objected to in the trial court, requires reversal if the error is "calculated to injure the rights of defendant," which means no more than there must be some harm to the accused from the error. TEX. CODE CRIM. PROC. ANN. art. 36.19 (Vernon 1981); *see also Abdnor v. State,* 871 S.W.2d 726, 731–32 (Tex.Crim.App.1994); *Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App.1984). In other words, a properly preserved error will call for reversal as long as the error is not harmless. *Almanza,* 686 S.W.2d at 171. In making this determination, "the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information

revealed by the record of the trial as a whole." *Id.* The burden lies with the defendant to persuade the reviewing court that he suffered some actual harm. *Abdnor*, 871 S.W.2d at 732; *LaPoint v. State*, 750 S.W.2d 180, 191 (Tex.Crim.App.1988) (op. on reh'g).

 The engaging statute requires that at least three individuals be involved. One individual cannot commit the offense alone. Furthermore, the application paragraph of the engaging in bribery count required the jury to find that Appellant conferred a benefit on at least two of the named EPISD employees in order to get EPISD's business for Lamco. Given the above, we find that there was no danger that the jury was misled by the parties' charge submitted to the jury and Appellant was not harmed by the failure of the trial court to give a more explicit parties' charge. Accordingly, Issue No. Seven is overruled.

In Issue No. Eight, Appellant argues that the court erred in disallowing the impeachment of witness Dr. Paz. At trial, Dr. Paz, the superintendent of the school district, testified that prior to the police investigation, he had not received any complaints or reports that cooling parts were not being received or that work was not being done on the cooling units. He stated that EPISD funds were missing during the period of time covered by the investigation. However, he admitted to testifying in a previous trial of several of Appellant's co-defendants that he had not been aware that such funds were missing. Dr. Paz stated that all of the EPISD employees who were Appellant's co-defendants were fired. Appellant's counsel then asked Dr. Paz if any of those individuals had filed grievances against EPISD for wrongful termination; thereby subjecting the school district to payment of monetary damages. The court sustained the State's relevance objection and Appellant was allowed to make a bill of exception.

During the bill of exception, Dr. Paz testified that eighteen of his employees filed grievances maintaining that they had been wrongfully terminated. Dr. Paz stated that he based his decision to terminate the workers upon the police investigation. His decision was based entirely on the fact that these individuals had been arrested as a result of that investigation. Dr. Paz also testified that none of the employees had sought monetary damages from the school district-they had only sought reinstatement. However, he acknowledged that it was possible for them to seek monetary damages if the terminations were wrongful. Dr. Paz also stated that two employees who had been acquitted in a prior trial, were ordered reinstated by the school board. Finally, Dr. Paz testified that Appellant had no pending action for damages against the school district. At the close of the bill of exception, the court upheld its prior ruling disallowing the questions concerning the grievances.

 The Constitutions of the United States and Texas both guarantee a criminal accused the right to confront and cross-examine the witnesses against him or her. *See Shelby v. State*, 819 S.W.2d 544, 546 (Tex.Crim.App.1991). The scope of appropriate cross-examination is necessarily broad and a defendant is entitled to pursue all appropriate avenues of cross-examination reasonably calculated to expose a motive, bias, or interest for the witness to testify. *Carroll v. State*, 916 S.W.2d 494, 497 (Tex.Crim.App.1994). However, the Confrontation Clause does not prevent a trial court from imposing reasonable limits on the defendant's inquiry into the potential bias or ulterior motive of the prosecution witness based on concerns about interrogation that is only marginally relevant. *See McDuff v. State*, 939

S.W.2d 607, 617–18 (Tex.Crim.App.1997), *cert. denied*, 522 U.S. 844, 118 S.Ct. 125, 139 L.Ed.2d 75 (1997).

The State points out that the actions filed by the school district employees were merely for reinstatement and did not involve civil lawsuits seeking monetary damages from the school district. Therefore, any questioning involving the grievances was not relevant in that the potential for lawsuits being filed was purely speculative. Clearly, a witness who has filed a civil suit regarding the subject matter of a criminal case at trial can be questioned regarding the suit in order to develop some potential bias. In *Shelby*, the Court of Criminal Appeals held that it was error to limit the cross-examination of a sexual assault complainant's mother who brought a civil lawsuit two months after the event against the corporate owners of the place where the assault occurred. *See Shelby*, 819 S.W.2d at 545. Given the broad scope of allowable cross-examination, we find that the State's analysis is too restrictive and we find that the court erred in disallowing the questions concerning the grievances. However, we find that the error was harmless.

The Court of Criminal Appeals has set forth a three-prong harm analysis for Confrontation Clause errors: first, the reviewing court must assume that the damaging potential of the cross-examination was fully realized. Second, bearing in mind that assumption, the reviewing court must review the error in connection with the following factors: (1) The importance of the witness's testimony in the prosecution's case; (2) Whether the testimony was cumulative; (3) The presence or absence of evidence corroborating or contradicting the testimony of the witness on material points; (4) The extent of cross-examination otherwise permitted; and (5) The overall strength of the prosecution's case. Lastly, the court must determine, in light of the first two prongs, if the error was harmless beyond a reasonable doubt. *Shelby*, 819 S.W.2d at 547.

In this case, Dr. Paz's testimony was not crucial to the case in that he merely testified that he would not have signed the checks if he knew the school district had not received the goods. He had no direct knowledge of the illicit scheme. Other witnesses testified that it was not proper to sign invoices for parts they never received from Lamco. As such, his non-consent testimony was cumulative. Accordingly, the requested impeachment would have had no impact on the evidence relied upon by the State to establish the commission of the offense. Given the above, Appellant's Issue No. Eight is overruled.

In Issue No. Nine, Appellant contends that the court erred in disallowing the defense an opportunity to preserve error by a bill of exception. During the presentation of Appellant's case, Carolyn Sanchez, a high school food-service manager, testified regarding the procedure used when repair work was done in the food processing area. She stated that when she made a work order, she would not sign off on the order until she was satisfied that the work was completed. Appellant then attempted to ask her if she had attended a large meeting of the school district employees; the prosecutor objected and a bench conference ensued. Out of the presence of the jury, Appellant's counsel argued that the school district and the District Attorney's office had pressured all of the defense witnesses into attending a meeting and one of the prosecutors improperly influenced the defense witnesses and the trial by stating his opinion that Appellant was responsible for getting the other EPISD employees terminated from their employment. The prosecutor re-

sponded that the meeting was held to address some concerns of those employees regarding their being subpoenaed. He also stated that the meeting was legitimate pretrial preparation. The prosecutor lodged an objection that the evidence was not relevant and the court sustained his objection. The court allowed Appellant to make a bill of exception regarding this issue.

During the bill of exception, Ms. Sanchez testified that the meeting was voluntary and she or anyone else could leave at any time. The witness stated that the prosecutor told those at the meeting that he believed Appellant was responsible for the other employees being fired. The court, again, sustained the prosecutor's objection to the testimony. Counsel for Appellant then requested that he be allowed to place the prosecutor on the stand to elicit testimony concerning his statement to the potential witnesses concerning Appellant's culpability. The court denied the request and stated that if any witnesses were influenced by the prosecutor's comments depended upon each individual witness and not the prosecutor. The court stated that the Appellant could question any of those witnesses for purposes of the bill. Appellant did not attempt to question any of the other subpoenaed witnesses concerning the meeting with the prosecutors. Initially, Appellant maintains that it was error to exclude the testimony of Ms. Sanchez because her testimony during the bill of exception indicated that the workers were paid extra to attend the meeting and they were pressured to attend. Appellant reasons that he was denied an opportunity to expose bias, motive, and prejudice on the part of the school district. Appellant makes reference to a prior issue to support this contention. However, Appellant provides no authority or discussion for the proposition that this particular testimony was relevant; further, her testimony indi-

cates that she attended the meeting voluntarily and she was not paid any extra to attend the meeting aside from not being docked from leaving work fifteen minutes early. Accordingly, we overrule Appellant's contention.

Next, Appellant asserts that it was error for the court not to allow Appellant to make a bill of exception regarding what the prosecutor would have stated concerning the reasons for the meeting with the witnesses and his statement concerning Appellant's culpability. A party has an absolute right to make an offer of proof. See Kipp v. State, 876 S.W.2d 330, 333 (Tex.Crim.App.1994). Normally, the remedy for such an error is to abate the appeal to permit counsel to develop the appellate record. See Spence v. State, 758 S.W.2d 597, 599–600 (Tex.Crim.App.1988), cert. denied, 499 U.S. 932, 111 S.Ct. 1339, 113 L.Ed.2d 271 (1991); Rivera v. State, 981 S.W.2d 336, 341 (Tex.App.-Houston [14th Dist.] 1998, no pet.). Nevertheless, the failure to allow a bill of exception or an offer of proof is subject to a harm analysis. See Williams v. State, 964 S.W.2d 747, 753 (Tex.App.—Houston [14th Dist.] 1988, pet. ref'd).

In this case, the record shows that Appellant could question any school district witness about any effects the meeting might have had on their testimony. The prosecutor explained his conduct in that he was preparing for trial and he was attempting to address the concerns of the potential witnesses about being subpoenaed. An abatement of this case would serve no purpose in that it would not result in any further information or benefit to Appellant. Appellant's Issue No. Nine is overruled.

In Issue No. Ten, Appellant asserts that the prosecution made improper jury argument. Appellant complains of

five instances during the prosecution argument that were improper. Proper jury argument consists of: (1) summation of the evidence; (2) reasonable deductions from the evidence; (3) answer to argument of opposing counsel; and (4) a plea for law enforcement. *Alejandro v. State*, 493 S.W.2d 230, 231–32 (Tex.Crim.App.1973). Jury argument must be analyzed in light of the entire argument made and not just isolated sentences. *See Mosley v. State*, 686 S.W.2d 180, 183 (Tex.Crim.App.1985); *Caballero v. State*, 927 S.W.2d 128, 132 (Tex.App.—El Paso 1996, pet. ref'd).

 First, Appellant asserts that the following argument was outside the record:

STATE: [S]ome people might say these cases aren't as exciting as murders or robberies or things like that, but I'll tell you right now they're just as serious. We're talking about two first degree felonies in this case. They're just as serious as those types of cases. Now, in this case—

DEFENSE: Judge, I'm going to object to him comparing this case to other offenses and arguing outside of the record.

COURT: Overruled, sir.

 A prosecutor may give his opinion of the serious nature of an offense by contrasting it with other cases in general, unless the prosecutor goes into the details of the other cases. *See Tatum v. State*, 649 S.W.2d 139, 141 (Tex.App.—Fort Worth 1983, pet. ref'd). As the prosecutor did not give the details of the other types of cases and did not dwell on the matter, we find that the court's ruling was not erroneous. *See Williams v. State*, 535 S.W.2d 637, 640 (Tex.Crim.App.1976).

 At the guilt-innocence stage of trial, Appellant's counsel made the following remarks:

DEFENSE: [S]o if the masses are placated by the State going after Albert Rodriguez, a small business man, and 28 employees of the district, the spotlight stops and no further inquiry into the actions of the big guys will ever be required. How convenient.

During the prosecutor's argument, the following exchange occurred:

STATE: [I]magine the audacity of coming in here and saying, what this case is all about is the big man versus the little man. The big man versus the little one. The $500,000 man, which is more of a man than most of us are money wise.

DEFENSE: I'm going to object to that comment, Judge, as outside the record.

COURT: Sustained.

DEFENSE: Move to disregard.

COURT: They are so instructed.

DEFENSE: Move for mistrial.

COURT: Overruled.

DEFENSE: Thank you.

 The State maintains that this was a proper area of argument. We agree. There was evidence at trial that Appellant had approximately $500,000 in sales in 1994. This was not a matter that was outside the record. Further, the prosecutor's comment was a permissible area of argument appropriate to respond to Appellant's argument that the State was "picking on the little guy." *See Alejandro*, 493 S.W.2d at 231–32. Also, matters of common knowledge may be argued to the jury. *See Laca v. State*, 893 S.W.2d 171, 185 (Tex.App.—El Paso 1995, pet. ref'd). The suggestion that $500,000 is more money than most people have is a matter of common knowledge. We find no error regarding the prosecutor's argument. Appellant next asserts that the following exchange

demonstrates that the prosecutor referred to community expectations:

> STATE: You need to be able to consider the full range of punishment. And in this case, the victim—we don't have John Doe, human being. What we have is a business. And should a business be treated any differently as a victim than should a human being? Should we treat—if the victim—if the victim is a business, should it be treated any differently than a human being? What did Dr. Paz say? He said, in this particular case, he's answerable to the taxpayers.
>
> DEFENSE: Judge, I'm going to object to this taxpayers argument. It's manifesting improperly.
>
> COURT: I'll sustain your objection, sir.
>
> DEFENSE: Move to disregard.
>
> COURT: They're so instructed—
>
> DEFENSE: Move for mistrial.
>
> COURT:—to disregard.
>
> DEFENSE: Move for a mistrial, Judge.
>
> COURT: Overruled.
>
> DEFENSE: Thank you.
>
> STATE: You heard what Dr. Paz said who he responds to, who he answers to.
>
> DEFENSE: Judge, I'm going to object to—he's going into the same thing you just told him not to go into.
>
> COURT: I'll sustain your objection, sir.
>
> STATE: The victim is the El Paso Independent School District, ladies and gentlemen.
>
> DEFENSE: I'm going to object. He's arguing victim expectations, Your Honor.
>
> COURT: Overruled, sir.
>
> DEFENSE: Thank you.
>
> STATE: The victim is the El Paso Independent School District, ladies and gentlemen. And you know what the purpose of the school district is set up for.
>
> DEFENSE: I'm going to object there as to arguing outside of the record, Your Honor.
>
> COURT: Overruled, sir.

 We take it from Appellant's brief that he complains on appeal regarding the "victim's expectations" aspect of the prior exchange. The State may make a proper plea for law enforcement, including arguing the relationship between the jurys' verdict and the deterrence of crime in general, arguing that juries should deter specific crimes by their verdicts, and arguing the impact of the jurys' verdict on the community. *Borjan v. State*, 787 S.W.2d 53, 55–56 (Tex.Crim.App.1990). However, the State is not permitted to argue that the community or any particular group in the community demands or expects a verdict of guilty or a specific punishment. *Id.* at 56. This type of improper argument urges the jury to lend its ear to the community rather than to be the voice of the community—which constitutes a proper plea for law enforcement. *Cortez v. State*, 683 S.W.2d 419, 421 (Tex.Crim.App.1984). However, not every reference to victims or the community constitutes an improper appeal to community expectations. The State may argue as a plea for law enforcement, the impact of a jury's verdict on the community or on a particular segment of the community. *See, e.g., Borjan*, 787 S.W.2d at 56–57.

 In the present case, the prosecutor's argument did not suggest to the jury that it should fulfill any community expectations. Rather, the argument suggested that a certain segment of the community would be impacted. Accordingly, we find no error. Further, even if erroneous, the court's instructions were sufficient to cure any error. *See, e.g., Calderon v.*

*State,* 847 S.W.2d 377, 383 (Tex.App.—El Paso 1993, pet. ref'd).

■ Next, Appellant complains of the following argument of the prosecutor during the punishment phase of trial:

> STATE: If you look at the evidence and you look at all the invoices—we're talking about hundreds of invoices, and we're talking about dozens of specific instances of bribery. What about all the other people that got arrested? Former students coming in here because their former teacher offers them a bribe. This isn't about race. These are the people that he got into trouble. I'd like to kind of explain to you what our legislative scheme is with respect to these offenses. The engaging in organized criminal activity is like a wheel.
>
> DEFENSE: Judge, I'm going to argue—or object to arguing outside the Court's charge on the law.
>
> COURT: Overruled, sir.
>
> DEFENSE: Thank you, Judge.
>
> STATE: It's like a wheel. The wheel cannot be supported without a hub. All of these other people that got into trouble because of the defendant are just spokes.
>
> DEFENSE: Judge, I'm going to object to him arguing outside of the record, Your Honor.
>
> COURT: Overruled, sir.

■ At trial, Appellant objected that the foregoing argument was outside the court's charge and outside the record. However, we find that the argument was a reasonable deduction from the evidence and a proper plea for law enforcement. The State was arguing that Appellant was more culpable than others involved in the scheme because Appellant was at the center of the illicit activity. Certainly, this is a reasonable deduction from the evidence

presented at trial. Further, urging the jury to assess punishment in accordance with the relative culpabilities of the participants is a proper plea for law enforcement. We find no error in the argument.

Lastly, Appellant asserts that the prosecutor adversely commented on Appellant's failure to testify. During the guilt-innocence stage of trial, the prosecutor, while indicating that Appellant's revenues were not from legitimate sales, stated:

> STATE: [A]nd for the last 18 months LAMCO did business with the school district, $514,000. I'm telling you we're talking about a talented ambitious man, $514,000 worth of business during that period. And how did he do that?
>
> DEFENSE: I'm going to object to that, Your Honor, as inference on a right to silence and manifesting improperly.
>
> COURT: Overruled, sir.

During the punishment stage of trial, the following exchange occurred:

> STATE: [E]arlier when we were arguing about the—on the guilt innocence, I told you that the evidence showed that Albert Rodriguez was a talented and ambitious man. He wasn't stupid. They're coming in here and they're telling you that he deserves a second chance. And that's one item that I want to address with you. He got his second chance already. The first time that he stole money and got away with it, he had a second chance. The second time that he did that and got away with that, he had a third chance. When you take money and you set up a system of the magnitude that he set up, you must know that you may have to pay the price if you're caught. How can a man with that talent and that ambition not now (sic) that he

might have to pay the price if he gets caught?

DEFENSE: I'm going to object to that, Your Honor, commenting on defendant's failure to testify.

COURT: Overruled, sir.

■ In assessing whether an argument is an improper comment on the defendant's failure to testify, the argument must be viewed from the standpoint of the jury, and any alleged reference to the failure to testify must be clear; an implied or indirect reference is not sufficient. *See Goff*, 931 S.W.2d at 548.

■ Rhetorical questions are generally within the scope of jury argument provided they are based on a reasonable deduction from the evidence. *Wolfe v. State*, 917 S.W.2d 270, 280 (Tex.Crim.App. 1996); *Saldivar v. State*, 980 S.W.2d 475, 502 (Tex.App.—Houston [14th Dist.] 1998, pet. ref'd). However, a rhetorical question may be an impermissible comment on the failure to testify if it is accompanied by a statement pointing to the lack of an explanation. *See Wolfe*, 917 S.W.2d at 280; *Saldivar*, 980 S.W.2d at 502.

■ In the first instance, the rhetorical question utilized was answerable from the evidence presented from Lamco's records and the testimony of Detective Palmer and James Sykes. Accordingly, the trial court did not err in overruling Appellant's objection.

■ Regarding the second complained—of argument, it too was a rhetorical question directed toward the evidence heard by the jury or a reasonable deduction from the evidence. The evidence at trial indicated Appellant built a thriving business and was acute enough to know that his conduct was illegal. The argument requested the jury to assess this in determining Appellant's punishment. The

court did not err in overruling Appellant's objection. Issue No. Ten is overruled.

In Issue No. Eleven, Appellant contends that the court erred in failing to charge the jury on various requested lesser-included offenses. Appellant requested instructions on theft between $20 and $500, theft between $500 and $1,500, engaging in organized criminal activity by theft with those two lesser amounts, and offering a gift to a public servant. In the charge to the jury on Count III (engaging in organized criminal activity—theft) the court did submit a lesser-included offense which would have allowed the jury to find that the aggregate amount of the theft was between $20,000 and $100,000 rather than between $100,000 and $200,000 as alleged in the indictment. The trial court denied the other requests.

■ To determine whether Appellant was entitled to a charge on the lesser-included offense, we apply a traditional two-prong test. *See Bignall v. State*, 887 S.W.2d 21, 23 (Tex.Crim.App.1994); *Rousseau v. State*, 855 S.W.2d 666, 672–73 (Tex. Crim.App.), *cert. denied*, 510 U.S. 919, 114 S.Ct. 313, 126 L.Ed.2d 260 (1993); *Royster v. State*, 622 S.W.2d 442, 446 (Tex.Crim. App.1981); *Bartholomew v. State*, 882 S.W.2d 53, 54–55 (Tex.App.—Houston [14th Dist.] 1994, pet. ref'd); *Ramirez v. State*, 976 S.W.2d 219, 226–27 (Tex.App.— El Paso 1998, pet. ref'd). First, the lesser-included offense must be included within the proof necessary to establish the offense charged. *Bignall*, 887 S.W.2d at 23; *Ramirez*, 976 S.W.2d at 227. Second, some evidence must exist in the record that would permit a jury rationally to find that if the defendant is guilty, he is guilty only of the lesser offense. *Ramirez*, 976 S.W.2d at 227. The credibility of the evidence and whether it conflicts with other evidence or is controverted may not be considered in making the determination of

whether the lesser-included offense should be given. *See Gadsden v. State*, 915 S.W.2d 620, 622 (Tex.App.—El Paso 1996, no pet.); *Barrera v. State*, 914 S.W.2d 211, 212 (Tex.App.—El Paso 1996, pet. ref'd). Regardless of its strength or weakness, if any evidence raises the issue that the defendant was guilty only of the lesser offense, then the charge must be given. *Saunders v. State*, 840 S.W.2d 390, 391 (Tex.Crim.App.1992). An accused is guilty only of a lesser-included offense if there is evidence that affirmatively rebuts or negates an element of the greater offense, or if the evidence is subject to different interpretations, one of which rebuts or negates the crucial element. *See Ramirez*, 976 S.W.2d at 227. That the jury may disbelieve crucial evidence pertaining to the greater offense is not sufficient to warrant the submission of the lesser-included offense submission to the jury; there must be some evidence directly germane to the lesser-included offense to warrant such submission. *See Skinner v. State*, 956 S.W.2d 532, 543 (Tex.Crim.App.1997), *cert. denied*, 523 U.S. 1079, 118 S.Ct. 1526, 140 L.Ed.2d 677 (1998).

■ Regarding the requested lesser-included offense request for theft in an amount between $20 and $500, Appellant maintains that he was entitled to this charge based on the testimony of Esparza that Appellant gave him $50 on one occasion. However, one aspect of a witnesses' testimony, "cannot be plucked out of the record and examined in a vacuum." *Godsey v. State*, 719 S.W.2d 578, 584 (Tex. Crim.App.1986). Instead, we must examine the statement together with all the other evidence. It was Esparza's testimony that Appellant gave him $50 on one occasion as part of his participation in the scheme. He also testified regarding the fake invoices he had signed and he stated the school district had not received any of the parts listed in those invoices. The total value of these parts was $1,137.50. Accordingly, Esparza's one statement that he received $50 cannot be taken out of context of all the evidence to support the submission of the requested lesser-included offense. The court did not err in refusing to place the lesser-included offense in the charge to the jury.

■ Appellant maintains that he was entitled to a theft charge in an amount between $500 and $1,500 because Ruben Prieto testified that he received approximately $800 from Appellant. As in the prior discussion, this testimony did not raise the issue of theft in an amount between $500 and $1,500. Prieto testified that he received $800 from Appellant as part of a fifty-fifty split with Appellant indicating that he signed for a total of at least $1,600 in illicit invoices. Also, the total of illicit invoices signed by Prieto amounted to $2,397.82. Again, the testimony that Prieto received $800 cannot be taken out of the context of the entire evidence to support the requested lesser-included offense.

■ Appellant also asserts that the court erred in failing to give his two requested lesser-included offense charges of engaging in organized criminal activity by theft in the amounts of $20 to $500 and $500 to $1,500. Both requested charges contemplated Appellant acting in a combination consisting of him, Esparza, and Prieto. For the reasons stated in the prior discussion, Appellant was not entitled to the requested lesser-included offense charges.

■ Lastly, Appellant argues that he was entitled to lesser-included offense charges on offering gifts to Esparza or Prieto in violation of Tex. Pen.Code Ann. § 36.09 (Vernon 1994).[4] Tex.Code Crim.

4. Section 36.09. Offering Gift to Public Servant

PROC. ANN. art. 37.09(1) (Vernon 1981) provides that an offense is a lesser-included offense if "it is established by proof of the same or less than all of the facts required to establish the commission of the offense charged." To determine if an offense is a lesser-included offense, an examination is required, initially, of the statutory elements of the charged offense; then, an examination of the statutory elements of the lesser offense is required followed by a review of the proof actually presented at trial to show the elements of the charged offense. *See Jacob v. State,* 892 S.W.2d 905, 907–08 (Tex.Crim.App.1995). The actual focus of the inquiry is on the facts required to prove the elements of the charged offense as opposed to the facts actually presented at trial. *Id.* at 908. If the facts needed to demonstrate the elements of the "lesser" offense are not functionally the same or less than the charged offense, it is not a lesser-included offense, regardless of the facts actually presented at trial to prove the elements of the charged offense. *See id.*

 The essential premise of the bribery statute is that the conferring of a benefit upon a public servant as consideration for violation of one of his duties is an offense. The offense focuses on the mental state of the actor, and is complete if a private citizen, by offering, conferring, or agreeing to confer, or a public servant or party official, by soliciting, accepting, or agreeing to accept, intends an agreement. *Hubbard v. State,* 668 S.W.2d 419, 420–21 (Tex.App.—Dallas 1984), *pet. granted and remanded on other grounds,* 739 S.W.2d 341 (Tex.Crim.App.1987). The offering of a gift to a public servant statute does proscribe a different conduct than the bribery statute. Unlike the bribery statute, it does not have a consideration requirement. However, it does require that the offeror be aware that the offeree is prohibited by law from accepting the benefit. *Id.* at 421. Accordingly, because the offering of a gift to a public servant statute has an element not required in the bribery statute, the first prong of the aforementioned test is not met and the offense is not a lesser-included offense of bribery. Issue No. Eleven is overruled.

 In Issue No. Twelve, Appellant argues that the court gave an erroneous instruction concerning the "on or about" charge. After both parties closed, Appellant objected to the court's "on or about" instruction. Appellant asserted that the court's stated statute of limitations determination was incorrect and urged that the proper statute of limitations for engaging in organized criminal activity was three years. Appellant then read a proposed charge into the record again asserting that the statute of limitations was three years. The court denied the requested charge. The court submitted the following "on or about" charge to the jury:

> The State is not required to prove the exact dates in the indictment, but may prove the offense, if any, to have been committed at any time prior to the presentment the date of the presentment (sic) of the indictment on the 17th of January, 1996.

 The "on or about" language in an indictment provides that the State may prove a date other than the date alleged, as long as the date is before the presentment of the indictment and it is

(a) A person commits an offense if he offers, confers, or agrees to confer any benefit on a public servant that he knows the public servant is prohibited by law from accepting.

(b) An offense under this section is a Class A misdemeanor.

within the applicable statute of limitations. *See Sledge v. State*, 953 S.W.2d 253, 256 (Tex.Crim.App.1997). The applicable statutes of limitations in the present case were three years for Count I (engaging by bribery) and five years for Count III (engaging by theft). *See* Tex.Code Crim. Proc. Ann. art. 12.01(6) (Vernon Supp.2001); Tex.Code Crim. Proc. Ann. art. 12.01(4)(A) (Vernon Supp.2001); Tex.Code Crim. Proc. Ann. art. 12.03(b) (Vernon Supp.2001). The State maintains that as the requested charge was an incorrect statement of the law, Appellant has not preserved error. When a defendant's requested charge is not a correct statement of the law, the trial court does not err in refusing to submit the charge. *See DeJesus v. State*, 889 S.W.2d 373, 379 (Tex.App.—Houston [14th Dist.] 1994, no pet.); *Showery v. State*, 678 S.W.2d 103, 109 (Tex.App.—El Paso 1984, pet. ref'd). The State reasons that as the requested charge with the incorrect limitations request was not limited to Count I of the indictment, the court did not err in refusing to submit the requested charge. We agree. Appellant had failed to preserve error. Issue No. Twelve is overruled.

In Issue No. Thirteen, Appellant asserts that the court provided an erroneous oral instruction to the jury at the time the punishment verdict was read in open court. The charge presented to the jury at the punishment stage of trial instructed the jurors that their punishment assessments for Counts I and III were to be shown on Verdict Forms A–1 and B–1. The charge also instructed the jurors that if they desired to probate any part of the sentences, they should so indicate on Verdict Forms A–2, A–3, B–2, and B–3. They were instructed that they could not recommend probation if the sentence they assessed was more than ten years. When the verdicts were returned, Verdict Forms A–1 and B–1 showed verdicts of twenty years on each count with no fines. When the verdicts were given to the trial court, the court noticed a typographical error in Verdict Form B–1. The verdict form in question read:

> We, the jury, further find that the defendant, ALBERTO RODRIGUEZ, guilty of engaging in Organized Criminal Activity by commission of the offense of Aggregated Theft assess his punishment as confinement in the Institutional Division of the Texas Department of Criminal Justice for: suspended and that the defendant be placed on Community Supervision.

Below this paragraph were the blanks for the term of years, amount of fine, and the signature of the presiding juror.

The trial court observed the problem with the form and conducted a bench conference. The court then stated to the jurors:

> Ladies and gentlemen of the jury, the Court was attempting to read out your verdict on Verdict Form B–1. And it is ambiguous and it is faux paus (sic) because there is a typographical error in the form, which reads "or suspended and that the defendant be placed on community supervision." I'll refer you back to the charge, which says "that if the sentence is 10 years of less, community supervision can be considered."
>
> And I think there's a typographical error on the form so I'm going to send you back to the jury room in reference to Verdict Form B–1. And relook at that and-because "suspended and the defendant be placed on community supervision" is a typographical error on the form. And if that is not what you intended to do, then I'm going to ask you to delete the words "suspend and the defendant be placed on community supervision," and then return your verdict

in a proper form, if that's what you intended to do. Okay.

The jury returned to the jury room and Appellant objected that the court had erroneously, orally, charged the jury as opposed to charging them in writing. He also objected that the court did not advise the jury what they should do if they were considering probation. Both objections were overruled.

The jury returned Verdict Form B–1 which showed that they assessed punishment for Count III at twenty (20) years' imprisonment. The erroneous language in the form was marked out and the correction was initialed by the presiding juror. The court then inquired if that was their verdict and the jurors responded affirmatively. The court accepted the two punishment verdicts.

Appellant's specific contention on appeal is that the court erred in failing to pose its oral instruction to the jury in the converse. In support of this proposition, Appellant cites *White v. State*, 492 S.W.2d 281 (Tex. Crim.App.1973) and *Hay v. State*, 472 S.W.2d 157 (Tex.Crim.App.1971). In *White*, the verdict form reflected a verdict of "not guilty" but the word "guilty" was written on another page of the charge. Over the defendant's objection, the trial court sent the jury back to reconsider its verdict and the jury returned with a verdict of guilty. *White*, 492 S.W.2d at 282. The Court of Criminal Appeals held that the trial court erred in sending the jury back to the jury room because the court should have polled the jury to determine if their first verdict was actually their verdict. *See id.* at 282–83.

In *Hay*, the presiding juror signed the "not guilty" form. When the court saw the verdict, it informed the jurors that he had signed the wrong verdict form and the jury was sent back to reconsider their verdict. *Hay*, 472 S.W.2d at 158–60. The Court of Criminal Appeals held that it was impossible to determine how the trial court knew that the not guilty verdict was the wrong verdict form. The Court held that the trial court's action amounted to an instructed verdict of guilty and stated that the trial court should have polled the jury instead of sending them back to reconsider their verdict. *See id.* at 160–61.

However, in *Reese v. State*, 905 S.W.2d 631 (Tex.App.—Texarkana 1995, pet. ref'd, untimely filed), the jury's verdict assessed punishment at "99 yrs-life." *Id.* at 640. The court explained the problem to the jurors and sent them back to reconsider the verdict. *Id.* The Court held that this was the proper procedure because the Court merely instructed the jurors to retire and reconsider an unauthorized punishment verdict. *Id.* Further, under TEX. CODE CRIM. PROC. ANN. art. 37.10(a) (Vernon Supp.2001), the court may put the verdict in the proper form when the jury fails to do so, or the court may instruct the jury to retire to reconsider the verdict if it does not comply with the charge or imposes a punishment not authorized by law for the offense. *See Williams v. State*, 750 S.W.2d 933, 935 (Tex.App.—Fort Worth 1988, no pet.).

The distinction between the authority cited by Appellant and the *Reese* case is that in the cases cited by Appellant, the verdicts were proper on their face. In the present case, Verdict Form B–1 was not proper on its face because it included the typographical error; therefore, it was not necessary for the trial court to poll the jury. Rather, it was proper for the trial court to instruct the jurors to correct the informality of the verdict. Accordingly, no error was shown. Issue No. Thirteen is overruled.

In Issue No. Fourteen, Appellant contends that the court improperly admitted

summaries of evidence which were actually hearsay summaries of the State's theory of the case and not proper summaries of voluminous records. At trial, numerous records were admitted into evidence as business records. State's Exhibits 1A–1R contained copies of the invoices which were signed by school district employees showing the items purchased by the school district from Lamco. Copies of the school district's work orders regarding the purchase of items from Lamco were contained in State's Exhibits 2A–2D. Also admitted into evidence was State's Exhibits 3A–3K which were copies of the school district's checks made payable to Lamco for the purchases shown in State's Exhibits 1A–1F and 2A–2D. The record demonstrates that all these exhibits are contained in ten record volumes and consist of numerous entries. James Sikes, Appellant's bookkeeper, identified Lamco's general ledgers. These items were admitted into evidence as State's Exhibits 14–15. Sikes compiled from these exhibits a list of Lamco's vendors—this list was admitted as State's Exhibit 16.

Detective Gerald Palmer utilized these records in conducting his investigation. He testified that he reviewed all of Lamco's invoices from its sales to the school district which were contained in State's Exhibits 1A–1F and drew up a spread sheet with that information. He reviewed Lamco's banking records to determine Lamco's purchases as inventory for resale and he determined from whom the inventory was purchased. He then entered that information onto another spread sheet. He then compared the two spread sheets regarding Lamco's purchases with items it sold to the school district.

Detective Palmer stated that State's Exhibit 54 was a summary he prepared from comparing the two spread sheets. Appellant objected that the exhibit was not a proper summary under Rule 1006 of the Texas Rules of Criminal Evidence because the exhibit contained Palmer's conclusions and opinions garnered through his investigation and was not a proper summary of the record that had been admitted. This objection was overruled. Another summary, State's Exhibit 55–79, showing the records by each employee involved was also admitted into evidence over Appellant's same objection.

Sharon Haddad, a certified public accountant, testified for the State regarding summaries, State's Exhibits 83–94, she had prepared. Appellant again objected that these summaries contained her conclusions and opinions. The trial court expressed concern that it might be the case that her testimony might contain her opinions and interpretations of the records and allowed a voir dire examination. During the voir dire hearing, Haddad testified how she prepared the summaries and the court required the parties to cull out those summaries which were derived from an examination of the records in evidence and those summaries which called for her opinion and which should have been revealed as part of the pretrial discovery process.

At the conclusion of the hearing, the court admitted State's Exhibit 85, a summary of Appellant's tax records, with no objection from Appellant. State's Exhibit 89, a summary of the school district's payments to Lamco, was admitted over Appellant's objection that it was cumulative of other evidence. A summary of Lamco's payments charged to it repairs and maintenance account, State's Exhibit 92, was admitted over Appellant's objection that under Texas Rules of Evidence 403, the evidence was more prejudicial than probative. State's Exhibit 93, information from Appellant's tax returns was also admitted over an objection by Appellant. Lastly, State's Exhibit 94, which contained a sum-

mary of payments by Lamco to school district employees showing which account of Lamco's was charged, was admitted into evidence over Appellant's Rule 403 objection.

■■■ The trial court has broad discretion in determining the admissibility of evidence, and its ruling should not be reversed on appeal absent a clear abuse of discretion. *See Allridge v. State,* 850 S.W.2d 471, 492 (Tex.Crim.App.1991); *Richards v. State,* 932 S.W.2d 213, 215 (Tex.App.—El Paso 1996, pet. ref'd); *Chavarria v. State,* 876 S.W.2d 388, 391 (Tex. App.—El Paso 1994, no pet.).

Tex.R. Evid. 1006 provides:

The contents of voluminous writings, recordings, or photographs, otherwise admissible, which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation. The originals, or duplicates, shall be made available for examination or copying, or both, by other parties at a reasonable time and place. The court may order that they be produced in court.

Appellant asserts that the summaries were prepared by a police officer and the State's expert witness in anticipation of trial and contained the opinions and conclusions of the individuals who prepared the summaries. Appellant also asserts that the summaries showed bias and that they were hearsay that amounted to argument of the State's case.

■■■ A Rule 1006 summary is not admissible unless the underlying documents are admissible under one of the exceptions to the hearsay rule. *See Welder v. Welder,* 794 S.W.2d 420, 429 (Tex.App.—Corpus Christi 1990, no pet.). In support of his contentions, Appellant cites *Callahan v. State,* 937 S.W.2d 553 (Tex.App.—Texarkana 1996, no pet.). In *Callahan,* the

court held that a written summary of a doctor's medical opinion was not a proper summary in that it was not voluminous and there was no basis for the summary to be anything other than hearsay. *Id.* at 559. However, in the present case, the writings were certainly voluminous and the records had been admitted under the business records act.

In *Welder,* the divorce litigant husband hired an accountant in anticipation of divorce proceedings. He prepared a summary of the couple's financial dealings over a span of thirty years. These records had been prepared by the couple's former accountant. That accountant testified regarding the admissibility of the records as business records. *Welder,* 794 S.W.2d at 428–29. The accountant hired for trial testified that in preparing the summary regarding the husband's separate property, he had to make some assumptions and presumptions to categorize various transactions as to whether such transactions involved the husband's separate property or community property. *Id.*

The wife objected that the summaries were invalid as summaries of the business records because they contained conclusions and characterizations of the income receipts, the expenditures, and the daily balance in the account as either community or separate property. The wife also asserted the summaries contained improper classifications of the assets from the funds in the account as being separate or community property based upon the nature of the expenditures. *Id.* The court stated that the summaries were admissible under Rule 1006 and the inclusion of the various characterizations did not make the summaries inadmissible. *See id.* at 429–30.

■■■ In the present case, Lamco's and the school district's business records were admitted into evidence. The information

contained in the summaries was obtained from those records. The fact that certain characterizations were made to prepare the summaries did not bar their admission.

 Furthermore, even if the court erred in admitting some of the summaries, the evidence contained in the summaries was in evidence due to the admission of Lamco's records and the school district's records as well as the testimony of the witnesses who testified regarding the records. As the information contained in the summaries was duplicitous of other evidence, no harm occurred. *See Wheatfall v. State,* 882 S.W.2d 829, 839–40 (Tex.Crim. App.1994), *cert. denied,* 513 U.S. 1086, 115 S.Ct. 742, 130 L.Ed.2d 644 (1995). Issue No. Fourteen is overruled.

 In Issue No. Fifteen, Appellant argues that the court erred in allowing Sharon Haddad to testify in that this ruling violated the court's pretrial discovery order. On January 16, 1997, the court signed a discovery order which stated, in part:

> The State shall allow the Defense to inspect all reports of expert witnesses made in connection with this particular case including results of physical or mental examinations and/or scientific tests, experiments, or comparisons (including any autopsy report) at a mutually agreed to time a least seven days before trial.

> Included in this order was the requirement that the State provide the defense with a list of the State's witnesses.

On that same date at a pretrial hearing, Appellant notified the court that the certified public accountant hired by Appellant as an expert witness had obtained employment with the same accounting firm that the State was utilizing as its expert consultant. The court granted Appellant's motion to disqualify the State's expert. On

May 30, 1997, prior to the commencement of trial on June 23, 1997, during a pretrial hearing, counsel for the State informed Appellant that the State had retained another accountant although the accountant was not named.

As stated in the prior discussion, the State called a certified public accountant, Sharon Haddad to the stand. Prior to her testimony, Appellant moved to exclude her testimony and her reports on the basis that the State had violated the court's pretrial discovery order. The State responded that these reports were not expert reports encompassed in the order but were summaries of Lamco's business records kept by James Sikes which had been previously admitted into evidence. The State argued that these summaries were not covered by the order and the State was not required to reveal them to Appellant seven days prior to trial.

As stated in the prior discussion, the court expressed concern that the summaries might involve her opinions and interpretations of the business records. After the voir dire examination, the court ruled that the summaries were proper and allowed them into evidence.

Haddad's testimony continued into the next day. During her testimony, Appellant reurged his objection to her testimony and asserted that all her testimony should be excluded due to the State's failure to comply with the pretrial discovery order. Appellant reasoned that she could not testify due to the State's failure to timely disclose the contents of the summaries. A discourse then ensued where State's counsel stated to the court that it had notified Appellant of the hiring of the certified public accountant. Appellant's counsel agreed that such notice was given, but he asserted that Appellant was unaware of the name of the witness; albeit, counsel acknowledged that Haddad was listed as a

witness but not as an expert witness. Appellant claimed surprise and made an oral motion for continuance. The trial court denied that motion and the motion to exclude Haddad's testimony.

Appellant asserts that Haddad's testimony and written materials should have been excluded due to a violation of the court's pretrial discovery order. We note that in admitting the summaries provided by Haddad, the court impliedly found that they were not expert reports subject to the pretrial discovery order. *Cf. Perkins v. State*, 902 S.W.2d 88, 100–01 (Tex.App.— El Paso 1995, pet. ref'd) (by holding that the State was not required to turn over the notes of a therapist until after the witness testified, the trial court impliedly found that the notes were not subject to the pretrial discovery order). Pursuant to the prior discussion concerning the admission of the summaries, they were summaries of business records that were properly admitted through other witnesses. Furthermore, the trial court excluded those exhibits that it characterized as involving her expert status. Therefore, the exhibits were not subject to the discovery order and the court did not err in allowing them into evidence. Issue No. Fifteen is overruled.

Having overruled each of Appellant's issues on review, we affirm the judgment of the trial court.