COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  | § |  |
|---|---|---|
| JULIAN CARDONA, | | No. 08-07-00161-CR |
| | § | |
| Appellant, | | Appeal from |
| | § | |
| v. | | 41st District Court |
| | § | |
| THE STATE OF TEXAS, | | of El Paso County, Texas |
| | § | |
| Appellee. | | (TC # 20060D04272) |
| | § | |

**O P I N I O N**

Julian Cardona appeals his convictions of intoxication manslaughter (Count I) and intoxication assault (Count II). Appellant entered a plea of guilty to each count before the jury and the trial court conducted a unitary proceeding to determine both guilt and punishment. TEX.CODE CRIM.PROC.ANN. art. 26.14 (Vernon 2009); *see Frame v. State*, 615 S.W.2d 766, 767 (Tex.Crim.App. 1981). The jury found Appellant guilty of each count and assessed his punishment at imprisonment for a term of ten years with respect to Count I and imprisonment for a term of two years with respect to Count II. We affirm.

**FACTUAL SUMMARY**

On the evening of November 6, 2005, Appellant, Fernando Torres, Roger Cruz, and Teresa Herrera went to a party at a friend's house. Appellant drove them in his truck and they arrived at around 10 p.m. or 11 p.m. All four of them drank alcoholic beverages and then left around 1 a.m. with Appellant driving. Torres sat in the front passenger seat while Herrera and Cruz sat in the rear seat. They planned to drop off Herrera first. Appellant was driving fast on a two-lane road which had a 30-mile per hour speed limit. Torres told Appellant to slow down as they approached a curve

because he felt Appellant might lose control. Appellant did lose control of the truck and it flipped over twice, landing in the front yard of a residence. Investigation conducted after the accident revealed that the vehicle was traveling at a minimum of 51-miles per hour.

Although Appellant and Torres were wearing seat belts, Cruz and Herrera were not and they were ejected from the vehicle. Torres climbed out and observed Appellant administering CPR to Herrera, who was not breathing. One of Cruz's leg was pinned under the truck and he was screaming for help. Erika Avila and her husband heard the accident and called for an ambulance before going outside to help. A man trapped under the truck was in pain and screaming. Torres got a shovel and began digging to free Cruz from the truck. Avila heard the man underneath the truck tell Appellant that the accident was his fault and ask him, "Why didn't you give [me] the truck? See what happened now?" When Appellant told Cruz that Herrera was dead, Cruz said, "See, you're stubborn, stubborn. Well, see you didn't give us the truck."

Deputy sheriffs arrived at the scene and one of them determined that Herrera was not breathing and did not have a pulse. The deputy sheriffs and fire department helped extricate Cruz from beneath the truck and he was taken by ambulance to the hospital and surgery was performed on his left leg. Cruz remained in the hospital for a week.

The medical examiner, Dr. Juan Contin, performed an autopsy on Herrera and determined that she had multiple injuries including a collapsed chest due to broken ribs, pulmonary contusions, and significant injuries to the spleen, liver, and small and large bowel mesentery. Dr. Contin concluded that Herrera would not have been able to breathe as a result of the massive chest injuries and she died of respiratory failure before she could bleed to death from the injuries to her internal organs. As a result of these injuries, Herrera was beyond medical help.

Appellant was taken into custody at the scene and he voluntarily submitted to an intoxilyzer breath test. The first test was performed at 2:51 a.m. and the second at 2:54 a.m., approximately two hours after the accident. The test results were .170 and .172, respectively. Appellant testified at trial and admitted that he had been drinking prior to the accident.

## INEFFECTIVE ASSISTANCE

In six issues, Appellant contends he was denied the effective assistance of counsel at trial because his attorney failed to object during voir dire and final argument to statements made by the prosecutor. The standard for determining claims of ineffective assistance under the Sixth Amendment is the two-step analysis adopted by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See Hernandez v. State*, 988 S.W.2d 770, 771-72 (Tex.Crim.App. 1999). Under the first prong, the defendant must show that counsel's performance was deficient to the extent that counsel failed to function as the "counsel" guaranteed by the Sixth Amendment. *Jackson v. State*, 877 S.W.2d 768, 771 (Tex.Crim.App. 1994). Under the second prong, the defendant must establish that counsel's deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693; *Jackson*, 877 S.W.2d at 771. Prejudice is established by a showing that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U .S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698; *Jackson*, 877 S .W.2d at 771. This two-pronged test is used to judge whether counsel's conduct so compromised the proper functioning of the adversarial process that the trial produced unreliable results. *Mallett v. State*, 65 S.W.3d 59, 63 (Tex.Crim.App. 2001).

Appellate review of defense counsel's performance is highly deferential and presumes that

counsel's actions fell within a wide range of reasonable professional assistance. *Mallett*, 65 S.W.3d at 63; *Tong v. State*, 25 S.W.3d 707, 712 (Tex.Crim.App. 2000). The burden to overcome that presumption falls on the appellant. *See Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. Any allegation of ineffectiveness must be "firmly founded" in the record. *Salinas v. State*, 163 S.W.3d 734, 740 (Tex.Crim.App. 2005). To defeat the presumption of reasonable professional assistance, the record must affirmatively demonstrate the alleged ineffectiveness. *Thompson v. State*, 9 S.W.3d 808, 814 (Tex.Crim.App. 1999). In the majority of instances, the record on direct appeal is undeveloped and will not sufficiently show that counsel's representation was so deficient and so lacking in tactical or strategic decision making as to overcome the presumption that counsel's conduct was reasonable and professional. *Bone v. State*, 77 S.W.3d 828, 833 (Tex.Crim.App. 2002). We cannot speculate that no plausible professional reason exists for a specific act or omission. *Id*. at 836. If the record is silent as to the facts, circumstances, and rationale behind an attorney's particular course of action, we are compelled to find that the defendant did not rebut the presumption that it was a reasonable one. *See Thompson*, 9 S.W.3d at 814. Although Appellant filed a motion for new trial, he did not raise the issue of ineffective assistance of counsel.

*Improper Commitment Question*

In Issue One, Appellant alleges that trial counsel should have objected when the prosecutor asked the jury panel an improper commitment question. The prosecutor asked the jury panel a two-part question. First, he asked the venire members to rate the seriousness of intoxication manslaughter on a scale of one to ten with one being "it's not important" and ten being "it's real important." Second, the prosecutor asked the venire members whether they thought they were there for punishment, deterrence, or rehabilitation.

During voir dire, a question is proper if it seeks to discover a juror's views on an issue applicable to the case. *Barajas v. State*, 93 S.W.3d 36, 38 (Tex.Crim.App. 2002). An otherwise proper question is impermissible, however, if it attempts to commit the juror to a particular verdict based on particular facts. *Barajas*, 93 S.W.3d at 38; *Standefer v. State*, 59 S.W.3d 177, 181 (Tex.Crim.App. 2001). Commitment questions are those that commit a prospective juror to resolve, or to refrain from resolving, an issue a certain way after learning a particular fact. *Barajas*, 93 S.W.3d at 38. Such questions often ask for a "yes" or "no" answer, in which one or both of the possible answers commits the jury to resolving an issue a certain way. *Id.* In *Standefer*, the Court of Criminal Appeals articulated a two-step test for determining when a voir dire question calls for an improper commitment: (1) Is the question a commitment question, and (2) Does the question include only those facts that lead to a valid challenge for cause? *Standefer*, 59 S.W.3d at 182. If the answer to the first question is "yes" and the answer to the second question is "no," then the question is improper. *Id*. at 182-83.

By asking the potential jurors to rate how seriously they viewed the offense of intoxication manslaughter, the prosecutor was attempting to determine their views and to expose any biases. The prosecutor did not attempt to bind the venire members to resolve, or refrain from resolving, an issue a certain way after learning a particular fact. The remainder of the question was designed to determine how each venire member viewed the purpose of punishment. This is a legitimate area of inquiry and does not bind the jury to return a particular verdict based on a particular sets of facts. Because the prosecutor's voir dire was proper, trial counsel was not ineffective for failing to object. *See Ex parte Morrow*, 952 S.W.2d 530, 536 (Tex.Crim.App. 1997)(counsel is not required to object if an objection would be futile). We overrule Issue One.

*Improper Statement of Law*

In Issue Two, Appellant contends that trial court should have objected when the prosecutor informed the venire members that they only had to be able to consider the full range of punishment during voir dire and before the presentation of evidence. He argues this had the effect of duping the jury into believe that it was not required to consider the full range of punishment when assessing punishment. Appellant's brief does not contain any citations to the record where this statement was made. Rule 38.1(i) provides that: "The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX.R.APP.P. 38.1(i). As an appellate court, it is not our task to comb the record in an effort to verify an appellant's claims. *See Alvarado v. State*, 912 S.W.2d 199, 210 (Tex.Crim.App. 1995). Because Appellant's brief does not direct our attention to where the alleged error occurred, we conclude this issue has been waived because it is inadequately briefed. *See Ledbetter v. State*, 208 S.W.3d 723, 735 (Tex.App.--Texarkana 2006, no pet.)(failure to provide record references resulted in issue being waived). Issue Two is overruled.

*Final Argument*

In Issues Three and Four, Appellant takes issue with trial counsel's failure to object to two portions of the prosecutor's final argument. In his third issue, Appellant argues the prosecutor made an improper argument when he pointed to the victim's mother and urged the jury to not give Appellant probation because it placed a low value on the life of the victim. In Issue Four, Appellant contends that trial counsel should have objected when the prosecutor referred to headlines in the newspaper because the argument urged the jury to assess punishment based on community expectations. We set forth the challenged arguments in the context of the prosecutor's final

argument:

> *Now, my co-counsel, he told you give probation.  What type of value are you assigning to the young woman who was in this case?  You're not assigning a whole lot of value to her life.  And there's her mother right there.  She's right there.*  [Emphasis added].  Now, does that mean you should give the defendant 20 years in prison?  No, but you've got to assign a value to her daughter's life.

> Now, what do we have here?  The full range of punishment is probation all the way up to 20 years in prison.  And when we were in voir dire, I -- we spoke about this.  How serious is this crime?  Everybody here said this was an eight or a nine or a 10 on a 10 point scale.  This is serious.  This is as serious as a heart beat or heart attack.  It doesn't get anymore serious.  You know why?  Because somebody is dead.  Somebody is dead.  Somebody is gone.

> Now -- so it's a serious case, the most serious case in this range.  So in my opinion, that means you start at the high end of 20 years.  Twenty years in prison and -- and work down if you have to.  Why shouldn't you give 20 years in prison?  He's young.  Okay.  He's remorseful.  Okay.  Those are reasons not to give 20 years, but you need to start there and work your way down.  Okay?

> Now, I think in a case like this, prison is the message that you need to be sending.  Now, I can't -- the Judge told you what the lawyers say is not evidence.  It's just argument.  My opinion doesn't matter.  Your opinion is what matters.  *If you're okay with the headlines in the paper on any case, man kills one, hurts another, jury gives probation.  Well, there's nothing I can say to that.  I disagree.  I think you need to send a stronger message.*  [Emphasis added].

Proper jury argument includes four areas:  (1) summation of the evidence presented at trial, (2) reasonable deduction drawn from that evidence, (3) answer to the opposing counsel's argument, or (4) a plea for law enforcement.  *Jackson v. State*, 17 S.W.3d 664, 673 (Tex.Crim.App. 2000).  To determine whether the prosecutor made an improper argument, we must consider the entire argument, not merely isolated sentences.  *Rodriguez v. State*, 90 S.W.3d 340, 364 (Tex.App.--El Paso 2001, pet. ref'd).  The prosecutor may express an opinion on the serious nature of the offense by contrasting it with other cases or crimes in general, as long as the prosecutor does not delve into the details of the other cases or crimes.  *Id*.  The prosecutor may also make a plea for law

enforcement. *Borjan v. State*, 787 S.W.2d 53, 55-56 (Tex.Crim.App. 1990); *Rodriguez*, 90 S.W.3d at 364. A plea for law enforcement may take many forms, one of which is to argue the relationship between the jury's verdict and the deterrence of specific crimes or crime in general. *Borjan*, 787 S.W.2d at 55. The State may also remind the jury of the effect that its verdict may have on specific segments of the community or the community in general. *Id*. at 56. Thus, the State may ask the jury to represent the community or to send a message to the community. *Robbins v. State*, 145 S.W.3d 306, 315 (Tex.App.--El Paso 2004, pet. ref'd). But the State may not argue that the community or a specific segment of the community expects or demands a particular verdict or a particular punishment. *Borjan*, 787 S.W.2d at 56; *Rodriguez*, 90 S.W.3d at 365.

The prosecutor's argument that the jury should not give probation because it placed a low value on the victim's life is a proper plea for law enforcement. The argument reminded the jury of the seriousness of the offense and the value of human life. The prosecutor did not make an improper argument by referring to the potential headlines if the jury granted Appellant probation or by asking the jury to send a stronger message. The prosecutor did not argue that the community expected or demanded a particular sentence. This is a permissible argument. An attorney is not ineffective for failing to object to permissible arguments. *See Richards v. State*, 912 S.W.2d 374, 379 (Tex.App.--Houston [14th Dist.] 1995, pet. ref'd). We overrule Issues Three and Four.

In his fifth issue, Appellant alleges trial court was ineffective because he failed to object to the prosecutor's final argument that Appellant was "falling down drunk" at the time of the accident. Appellant's brief does not contain any citation to the record showing where the prosecutor made this statement. Rule 38.1(i) provides that: "The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX.R.APP.P. 38.1(i).

Because Appellant's brief does not direct our attention to where the alleged error occurred, we conclude this issue has been waived because it is inadequately briefed. *See Ledbetter*, 208 S.W.3d at 735 (failure to provide record references resulted in issue being waived). Issue Five is overruled.

In his sixth and final issue, Appellant argues that the combined effect of all of the instances of ineffective assistance set forth in the first five issues warrants giving Appellant a new trial. We have found no merit in any of the arguments raised in the first five issues. There is some authority that a number of errors may be found harmful in their cumulative effect, but there is no authority holding that non-errors may in their cumulative effect cause error. *See Chamberlain v. State*, 998 S.W.2d 230, 238 (Tex.Crim.App. 1999); *Ozuna v. State*, 199 S.W.3d 601, 613 n.7 (Tex.App.--Corpus Christi 2006, no pet.)(finding there was no cumulative error in context of ineffective assistance of counsel claim). We therefore overrule Issue Six and affirm the judgment of the trial court.

September 30, 2009

ANN CRAWFORD McCLURE, Justice

Before Chew, C.J., McClure, and Carr, JJ.
Carr, J., not participating

(Do Not Publish)