# Court of Appeals

## Tenth Appellate District of Texas

=======

10-23-00130-CR

=======

Jerry Nelson Reyes,
Appellant

v.

The State of Texas,
Appellee

=======

On appeal from the
413th District Court of Johnson County, Texas
Senior Judge John Weeks, presiding
Trial Court Cause No. DC-F202200726

=======

CHIEF JUSTICE JOHNSON delivered the opinion of the Court.

## MEMORANDUM OPINION

Appellant, Jerry Nelson Reyes, was found guilty by a jury of the third-degree felony offense of driving while intoxicated with two prior convictions for driving while intoxicated. *See* TEX. PENAL CODE ANN. §§49.01, 49.04, 49.09(b). The jury found two enhancement paragraphs alleging prior felony convictions for driving while intoxicated true and assessed Reyes's punishment at 70 years' confinement. In four issues, Reyes argues that (1) the trial court erred by

denying his motion to suppress the warrantless blood draw, (2) the evidence was insufficient to support his conviction, (3) the trial court erred by denying his request for a jury instruction pursuant to Article 38.23 of the Texas Code of Criminal Procedure, and (4) the trial court erred by allowing improper jury argument at the punishment phase of the trial. We will affirm.

## A. Background

On January 5, 2021, Reyes was involved in a traffic accident when he rear-ended another vehicle. Cleburne Police Officer Clayton Carmack responded to the accident and observed that Reyes showed signs of intoxication. Officer Carmack asked Officer Justin Hand to conduct an investigation for driving while intoxicated.

Officer Hand testified that Reyes staggered when he tried to stand up, that his speech was incoherent, and that he had an odor of alcoholic beverage on his person. Officer Hand first performed the horizontal gaze nystagmus field sobriety test (HGN) on Reyes, and based upon that test, he determined that Reyes was intoxicated. Officer Hand then attempted to conduct the walk-and-turn test and the one-legged stand tests, but Reyes stated that he could not perform either one of those tests. Officer Hand concluded that he had probable cause to detain Reyes for driving while intoxicated. Because Reyes had been involved in an accident, Officer Hand determined that he needed to take Reyes to the hospital for medical clearance before taking him to jail.

Officer Hand testified that Reyes did not refuse medical treatment. At the hospital, Officer Hand read Reyes the required statutory warnings and asked Reyes to provide a blood sample to test his blood alcohol concentration. Reyes refused consent, and Officer Hand did not obtain a warrant for the blood sample. Officer Hand explained that he did not have time to get a warrant because medical personnel informed him that Reyes "was going to receive treatment" and that "[o]nce [Reyes] received treatment, it could affect" the results.

Doctor David Lunow treated Reyes in the emergency room. Dr. Lunow smelled alcohol on Reyes's breath, and he testified that when treating patients who might be intoxicated, he orders a blood draw to test the blood alcohol level. Dr. Lunow stated that he ordered a blood draw for Reyes for medical purposes and that it was not at the request of law enforcement. According to Dr. Lunow, Reyes verbally consented to an IV with a blood draw, and he also consented in writing to receive medical treatment. Reyes's blood alcohol concentration was 0.352, which is more than four times the legal limit of 0.08. The Cleburne Police Department obtained a subpoena for Reyes's medical records, including the results of the blood alcohol test.

Reyes filed a pre-trial motion to suppress the blood alcohol test results arguing that he did not consent to the blood draw and that the officers did not obtain a warrant. At the suppression hearing, Dr. Lunow testified that he

ordered the blood draw for medical purposes and that Reyes consented to the blood draw. Reyes maintained that the officers' body cam video showed that he was sleepy and groggy when the IV was started for the blood draw. He further argued that the video captured a nurse stating the doctor had not ordered an alcohol test. The trial court denied the motion to suppress. Reyes's counsel continued to argue throughout the trial that he did not consent to the blood draw.

### B. Issues One and Two

In his first issue, Reyes argues that the trial court erred by denying his motion to suppress the blood draw because the State failed to prove that he consented to the blood draw. In his second issue, he argues that because the blood evidence was obtained illegally and should have been excluded, there is no evidence to prove he was intoxicated at the time he operated a motor vehicle.

### 1. Authority

We review a trial court's ruling on a motion to suppress evidence for an abuse of discretion, using a bifurcated standard. *See Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We give "almost total deference" to the trial court's findings of historical fact that are supported by the record and to the trial court's rulings on mixed questions of law and fact that turn on an evaluation of credibility and demeanor. *Id.* "We conduct a *de novo* review of evidence when the resolution

of mixed questions of law and fact do not turn on an evaluation of credibility and demeanor." *St. George v. State*, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007) (citing *Guzman*, 955 S.W.2d at 89). We also review the trial court's legal rulings *de novo*. *State v. Martinez*, 570 S.W.3d 278, 281 (Tex. Crim. App. 2019).

When ruling on a motion to suppress, the trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007). Furthermore, we view all of the evidence in the light most favorable to the trial court's ruling. *State v. Garcia–Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008). We will uphold the trial court's ruling if it is reasonably supported by the record and is correct under any theory of law applicable to the case. *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006).

When explicit findings of fact are not made by the trial court, the appellate court infers the necessary factual findings that support the trial court's ruling if the record evidence, when viewed in the light most favorable to the ruling, supports these implied fact findings. *Garcia–Cantu*, 253 S.W.3d at 241. Only in the narrow circumstances when video evidence provides indisputable visual evidence contradicting witness testimony and does not pivot on an evaluation of credibility and demeanor should we decline to give "almost total deference" to the trial court's implicit findings. *See Carmouche v. State*, 10 S.W.3d 323, 332 (Tex. Crim. App. 2000). If the trial court could

have reasonably denied a motion to suppress given the record evidence and given the applicable law, the appellate court must affirm the trial court's ruling. *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003).

When addressing a challenge to the sufficiency of the evidence, we consider whether, after viewing all of the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017). This standard requires the appellate court to defer "to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789. We may not re-weigh the evidence or substitute our judgment for that of the factfinder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). The court conducting a sufficiency review must not engage in a "divide and conquer" strategy but must consider the cumulative force of all the evidence. *Villa*, 514 S.W.3d at 232. Although juries may not speculate about the meaning of facts or evidence, juries are permitted to draw any reasonable inferences from the facts so long as each inference is supported by the evidence presented at trial. *Cary v. State*, 507 S.W.3d 750, 757 (Tex. Crim. App. 2016) (citing *Jackson*, 443 U.S. at 319, 99 S.Ct. 2789); *see also Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex.

Crim. App. 2007). We presume that the factfinder resolved any conflicting inferences from the evidence in favor of the verdict, and we defer to that resolution. *Merritt v. State*, 368 S.W.3d 516, 525-26 (Tex. Crim. App. 2012). This is because the jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given to the testimony. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). "Direct evidence and circumstantial evidence are equally probative, and circumstantial evidence alone may be sufficient to uphold a conviction so long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015); *Hooper*, 214 S.W.3d at 13.

## 2. Discussion

The State agrees that there was no warrant for Reyes's blood draw. The blood sample was taken by medical personnel, and the State obtained Reyes's medical records for the results of the blood sample. The State does not need to obtain a warrant to obtain the results of blood-alcohol testing by a hospital, performed for medical purposes, following a traffic accident. *State v. Martinez*, 570 S.W.3d 278, 285 (Tex. Crim. App. 2019). Reyes argues, however, that the State failed to show he voluntarily consented to the blood draw by medical personnel.

Reyes exhibited signs of intoxication at the time he was taken to the hospital. Dr. Lunow explained that it is routine to order a blood draw and testing for a patient exhibiting signs of intoxication. Dr. Lunow testified at the hearing on Reyes's motion to suppress that he ordered (1) the blood draw for Reyes for medical purposes, and (2) the blood sample be tested for the blood alcohol level. Reyes's medical records show that he "verbally consented to an IV with lab draw." Dr. Lunow stated that Reyes was conscious at the time medical personnel started the IV and that he was cooperative and answered all questions. Officer Hand testified at the motion to suppress hearing that although Reyes refused to consent to a blood draw by law enforcement, he never refused medical treatment or requested to leave the hospital.

The State presented evidence that Reyes's blood draw was taken at the direction of Dr. Lunow and that Reyes consented to the blood draw by medical personnel. Although Reyes argues on appeal that there is contradictory evidence because the law enforcement body cam video does not capture Reyes verbally consenting to the blood draw and a nurse indicated the doctor did not order an alcohol test, we give "almost total deference" to the trial court's findings of historical fact that are supported by the record. *Guzman*, 955 S.W.2d at 89. The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Wiede v. State*, 214 S.W.3d at 24–25. Dr. Lunow testified that he ordered the blood draw and

alcohol testing for medical purposes. Reyes's medical records state that he gave verbal consent for the blood draw. Therefore, we conclude that the trial court did not abuse its discretion by denying Reyes's motion to suppress the blood draw. We overrule the first issue.

In the second issue, Reyes argues that without the illegally obtained blood evidence, the remaining evidence was legally insufficient to prove he was intoxicated at the time he operated a motor vehicle. A person commits an offense if the person is intoxicated while operating a motor vehicle in a public place. TEX. PENAL CODE. ANN. § 49.04(a). Intoxicated means not having the normal use of mental or physical faculties by the reason of the introduction of alcohol or having an alcohol concentration of 0.08 or more. *See* TEX. PENAL CODE ANN. § 49.01(2).

There is no dispute that Reyes's blood sample obtained by medical personnel showed an alcohol concentration of 0.352, which is greater than 0.08 required to prove intoxication. Having concluded that Reyes's blood sample was acquired voluntarily and was admissible, we likewise conclude that the evidence is sufficient to support his conviction for driving while intoxicated.

Moreover, even without the blood evidence, the evidence was sufficient to show that Reyes lost the normal use of his mental or physical faculties by reason of the introduction of alcohol. Officer Carmack and Officer Hand both testified that Reyes was unsteady when walking and had slurred, incoherent

speech. Officer Hand further detected the odor of an alcoholic beverage on Reyes's person. Reyes admitted at the scene that he had consumed alcohol. Officer Hand stated that he determined Reyes was intoxicated after administering the HGN field sobriety test. Reyes informed Officer Hand that he could not perform the walk-and-turn test or the one-legged stand test. The jury viewed the body cam video from both Officer Carmack and Officer Hand and was able to observe Reyes's mental and physical faculties and draw reasonable inferences from those videos. *See Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789. Viewing the evidence in the light most favorable to the verdict, we conclude that the evidence was sufficient to support Reyes's conviction. We overrule the second issue.

## C. Issue Three

In his third issue, Reyes contends that the trial court erred by denying his request for a jury instruction under Article 38.23 of the Texas Code of Criminal Procedure. Article 38.23 provides that:

(a) No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.

In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.

TEX. CODE CRIM. PROC. ANN. art. 38.23(a).

## 1. Authority

A defendant's right to the submission of jury instructions under Article 38.23(a) is limited to disputed issues of fact that are material to his claim of a constitutional or statutory violation that would render evidence inadmissible. *Madden v. State*, 242 S.W.3d 504, 509-10 (Tex. Crim. App. 2007). The only question is whether under the facts of a particular case an issue has been raised by the evidence so as to require a jury instruction. *Id.* at 510. There are three requirements that a defendant must meet before he is entitled to the submission of a jury instruction under Article 38.23(a), "the evidence heard by the jury must raise an issue of fact, the evidence on that fact must be affirmatively contested, and that contested factual issue must be material to the lawfulness of the challenged conduct in obtaining the evidence." *Id.*

## 2. Discussion

Reyes specifically argues that he was entitled to an Article 38.23 instruction based on the disputed fact issue over his consent to the blood draw by medical personnel. Reyes's medical records show that he gave verbal consent to the blood draw, and those records were admitted into evidence. The medical records also contained Reyes's electronic signature consenting to

treatment. In addition, there was testimony that Reyes never refused treatment or requested to leave the hospital.

To raise a disputed fact issue warranting an Article 38.23(a) jury instruction, there must be some affirmative evidence that puts the existence of that fact into question. *Id*. at 513. Therefore, Reyes was required to contest the issue of consent by affirmative evidence. There was evidence that Reyes refused to consent to the State's request for a blood sample. There was no evidence that Reyes affirmatively denied consent for the blood draw by medical personnel. There is no evidence that he revoked the verbal consent noted in his medical records. We conclude that the issue of consent was not affirmatively disputed at trial, and Reyes was not entitled to an instruction under Article 38.23. We overrule the third issue.

## D. Issue Four

In his fourth issue, Reyes maintains that the trial court erred in overruling his objection to the State's improper jury argument at the punishment phase of trial.

### 1. Authority

We review a trial court's ruling on an objection to closing argument for an abuse of discretion. *Reed v. State*, 421 S.W.3d 24, 31 (Tex. App.—Waco 2013, pet. ref'd). "A trial court abuses its discretion when its decision lies outside the zone of reasonable disagreement." *Gonzalez v. State*, 544 S.W.3d

363, 370 (Tex. Crim. App. 2018). A trial court's erroneous ruling on a defendant's objection to improper jury argument is a non-constitutional error that must be disregarded unless it affects the defendant's substantial rights. TEX. R. APP. P. 44.2(b); *Castruita v. State*, 584 S.W.3d 88, 109 (Tex. App.—El Paso 2018, pet. ref'd). To determine whether an appellant's rights were affected, the reviewing court "must independently examine the record as a whole." *Loch v. State*, 621 S.W.3d 279, 282 (Tex. Crim. App. 2021). Generally, jury argument is limited to:

> (1) summations of the evidence; (2) reasonable deductions from the evidence; (3) answers to argument of opposing counsel; and (4) a plea for law enforcement. *Guidry v. State*, 9 S.W.3d 133, 154 (Tex. Crim. App. 1999). To determine if the prosecutor made an improper jury argument, we must consider the entire argument in context—not merely isolated instances. *See Rodriguez v. State*, 90 S.W.3d 340, 364 (Tex. App.—El Paso 2001, pet. ref'd). An argument that exceeds these bounds is error, but only reversible error if, in light of the record as a whole, the argument is extreme or manifestly improper, violates a mandatory statute, or injects into the trial new facts that are harmful to the accused. *Felder v. State*, 848 S.W.2d 85, 94–95 (Tex. Crim. App. 1992).

*Cosino v. State*, 503 S.W.3d 592, 603-04 (Tex. App.—Waco 2016, pet. ref'd).

### 2. Discussion

At punishment, Reyes's trial counsel argued during his closing argument that the State wanted the jury to give Reyes the maximum sentence so that he would spend the rest of his life in prison. The State then responded in its closing argument that Reyes's counsel was right because the State was asking

for a sentence on the higher end of the spectrum.  The State explained that it is their job to keep citizens safe.  The State continued:

> Mr. Reyes poses a severe threat to society.  No question about it. How often do we turn on the news and see that someone's been killed in a car wreck because the driver was drunk, or somebody was on the side of the road and got hit by a drunk driver, or the police officer is making a stop on the side of the road and gets hit by a drunk driver?  It's amazing the amount of times Mr. Reyes has been convicted of driving drunk that he hasn't hurt anybody. Remember, he had a .352 blood alcohol concentration at 12:30 on a weekday afternoon.

Reyes's trial counsel objected that was not what the evidence showed because the blood draw occurred more than two hours later.  The trial court overruled the objection.  The State then continued:

> The legal limit of intoxication is .08.  That is almost four-and-a-half times over the legal limit. 12:30 in the afternoon.  By a school. Keep that in mind while you're back there.
>
> It's about public safety.  You get a chance today to insure that Mr. Reyes doesn't get out there and drink and drive - - because he will. We know he will - - to make sure he doesn't get out there, drink and drive, and kill somebody.  All it takes is one little mistake for him to kill somebody.  You don't want to sit there and be watching the news several years from now and go, 'I wonder if it was him.' Think of that when you're back there.
>
> 25 to 99 or Life.  I'm asking for the further end.

There was no objection by Reyes.

Reyes argues that the State's argument went outside the record to inflame the jury with unsupported speculation that he posed an ongoing danger if released back into society.  He contends that there was no evidence

he had previously caused injury or death with prior offenses for driving while intoxicated or was likely to in the future.

Rule 33.1 applies to jury argument. *See* TEX. R. APP. P. 33.1; *Threadgill v. State*, 146 S.W.3d 654, 657 (Tex. Crim. App. 2004). Reyes's only objection to the State's closing argument at punishment concerned the statement that his blood alcohol concentration was 0.352. He made no objection to the State's argument that he posed a danger to society and that the jury should ensure he does not get a chance to drink and drive again. Where a trial objection does not comport with the issue raised on appeal, the appellant has preserved nothing for review. *Ibarra v. State*, 11 S.W.3d 189, 197 (Tex. Crim. App. 1999). Therefore, Reyes has not preserved his complaint for review.

Moreover, even if he had preserved his complaint for review, the complained of argument was not improper. We conclude the State's closing argument to be a reply to Reyes's closing argument and a plea for law enforcement. *See Moranza v. State*, 913 S.W.2d 718, 731 (Tex. App.—Waco 1995, pet. ref'd). We overrule the fourth issue.

### E. Conclusion

Having overruled all of Reyes's issues, we affirm the trial court's judgment.

_____

MATT JOHNSON
Chief Justice

OPINION DELIVERED and FILED:  July 17, 2025.

Before Chief Justice Johnson,
          Justice Smith, and
          Justice Harris
Affirmed
Do not publish
CRPM

